**Kenneth R. AMIDON, Appellee,**

v.

**John F. LEHMAN, Jr., Secretary of the Navy; Thomas M. Hayward, Admiral, Chief of Naval Operations, Appellants.**

**Donald H. LAJOIE, Appellee,**

v.

**Casper W. WEINBERGER, Secretary of Defense, John F. Lehman, Jr., Secretary of the Navy, Admiral Thomas M. Hayward, Chief of Naval Operations, Appellants.**

**Nos. 81–1748, 81–1841.**

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1982.

Decided April 28, 1982.

Rehearing and Rehearing En Banc Denied June 21, 1982.

Margaret E. Clark, Civ. Div., Dept. of Justice, Washington, D. C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Justin W. Williams, U. S. Atty., Alexandria, Va., Anthony J. Steinmeyer, Civ. Div., Dept. of Justice, Washington, D. C., on brief), for appellants.

Thomas B. Kenworthy, Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., Ronald L. Bub, Saul and Barclay, Fairfax, Va., on brief), for appellees.

Before WINTER, Chief Judge, and ERVIN and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

In February of 1980 appellees Kenneth R. Amidon and Donald H. Lajoie were members of the United States Navy stationed in Rota, Spain. Amidon's active duty enlistment was to expire on March 23, 1981, Lajoie's on August 18, 1981. On March 3, 1980 appellees and one other service member, James M. Elwood, were taken into custody by United States government agents in connection with the alleged murder of a fellow sailor in Spain. On March 5, 1980 the three sailors were transferred to Spanish authorities and taken before a Spanish judge. Because the United States had primary jurisdiction over the prosecution pursuant to "The Agreement in Implementation of the Treaty of Friendship and Cooperation between Spain and the United States of America" (hereafter "The Agreement"),[1] appellees were returned to United States authorities.

---

1. Article XV, ¶ 3(a)(1) provides in part:

 For the sole purpose of determining whether an act or omission is a punishable offense under the law of Spain or under the military law of the United States, or both, the interpretation of the law of Spain by the Spanish authorities shall be accepted by the Government of the United States, and the interpretation of the military law of the United States by the authorities of the United States shall be accepted by the Spanish authorities. When, by application of the foregoing provisions, it is determined that an act or omission is a punishable offense under both the law of Spain and the military law of the United States, thereby giving rise to concurrent rights to exercise jurisdiction, the following rules shall be applied:

The Navy began its prosecution, but all United States charges were dismissed on July 11, 1980 on the ground that the Navy had failed to provide a speedy trial as required by Title 10 U.S.C. § 810. On March 19, 1981 the Court of Military Appeals upheld the dismissal of charges.

Despite the March 23, 1981 expiration date of Amidon's active duty enlistment, the Navy detained him in Spain, involuntarily extending his period of active duty. Because further detention in Spain subjected him to possible prosecution by Spanish authorities, Amidon in late April 1981, petitioned the district court for a writ of habeas corpus (28 U.S.C. § 2243), seeking his return to the United States and release from active duty. Anticipating that a similar extension would be imposed upon his enlistment, Lajoie petitioned for the same relief, effective upon expiration of his active duty enlistment.

The district court granted appellees' petitions for habeas corpus, ordered the Navy to return them to the United States, and to release them from active duty. Appellees were returned to this country, but the order to release them from active duty was stayed pending this appeal. We affirm the granting of the writ but for reasons different from those announced by the district court.[2]

The Navy asserts that its authority to hold appellees rests in the Agreement. Article XVIII, ¶ 3 of that document provides in pertinent part:

> The custody of a member of the United States Personnel in Spain, *who is legally subject to detention by the military authorities of the United States and over whom Spanish jurisdiction is to be exercised, shall be the responsibility of the United States military authorities,* at

(a) The military authorities of the United States shall have the primary right to exercise jurisdiction over United States Personnel in Spain subject to the military law of the United States for the following offenses punishable under such law:

(1) offenses solely against the property or security of the United States, or offenses solely against the person or property of a

their request, until the conclusion of all judicial proceedings, at which time the member will be delivered to Spanish authorities at their request for execution of the sentence . . . . (Emphasis added).

The United States has, therefore, agreed to hold its personnel for Spanish authorities when two conditions are met. First, the Navy must have independent authority to detain the service member. Second, a determination must be made that Spanish jurisdiction is to be exercised.

■ The only issue before this court is whether the Navy has authority to detain the appellees. Standing alone, the Agreement provides no such authority. Article XVIII of that document merely describes one situation in which the United States has agreed to exercise its authority to detain a service member. The Agreement clearly contemplates that such authority is to have an independent source. If appellees are legally subject to detention by the Navy, additional authority under the Agreement is not necessary. If appellees are not legally subject to detention, the Agreement does not require further inquiry.

Unfortunately the Navy, in the district court and here, has maintained that its authority to detain appellees is Article XVIII of the Agreement. The district court was steered off course by the government's misplaced argument and based its opinion on a finding that "involuntary extension could not have been justified by an obligation to hold petitioner[s] as one over whom Spanish jurisdiction *is* to be exercised," the second condition in the Agreement [emphasis in original].

We must, therefore, examine whether the Navy has independent authority to detain appellees.

member of the United States Personnel in Spain . . . .

2. Elwood also petitioned for a writ of habeas corpus. This court recently affirmed the denial of habeas relief in *Elwood v. Lehman*, 673 F.2d 1309 (4th Cir. 1982). Elwood's case, however, turned on the validity of a voluntary extension, not an involuntary extension.

Article 38040260(5)(h) of the Bureau of Naval Personnel Manual (hereafter BUPERSMAN) purports to authorize involuntary extensions of enlistment periods for various reasons, one of which is "[a]s a result of apprehension, arrest, investigation or filing of charges ... by civil authorities that may result in trial ...." Title 32 CFR § 730.4(e) also purports to set out reasons enlisted personnel may be held beyond their enlistment term. Section 730.-4(e) does not include the above quoted reason found in the BUPERSMAN. In all, ten reasons for enlistment extension are listed in § 730.4(e). The same ten reasons plus the above quoted language are reproduced in the BUPERSMAN, Article 38040260(5).

While it is true that § 700.1202 of Title 32 provides authority for the Chief of Naval Personnel to issue the BUPERSMAN, that authority is limited by § 700.1201.[3] Section 700.1201 makes it clear that manuals "issued within the Department of the Navy which conflict with, alter or amend any provision of Navy Regulations" are to have no effect.

Section 730.4(e) purports to set out all the grounds upon which enlistments may be extended. By including the additional ground of involuntary extension as a result of apprehension, arrest, confinement, investigation, or filing of charges ... by civil authorities that may result in trial ... the BUPERSMAN has significantly amended the regulation.

The portion of Article 38040260(5)(h) dealing with charges, etc. by civil authorities is, therefore, without effect. The Navy has no authority to extend appellees' enlistments based on that Article.

Appellees not being legally subject to detention by the Navy, the only issue we must resolve, we affirm the district court's grant of habeas relief.

AFFIRMED.

---

**3.** § 700.1201 Purpose and force of United States Navy Regulations.

United States Navy Regulations is the principal regulatory document of the Department of the Navy, endowed with the sanction of law, as to duty, responsibility, authority, distinctions, and relationships of various commands, officials, and individuals. Other regulations, instructions, orders, manuals, or similar publications, shall not be issued within the Department of the Navy which conflict with, alter or amend any provision of Navy Regulations.