Kenneth R. AMIDON, Appellee,

v.

John F. LEHMAN, Jr., Secretary of the Navy; Thomas M. Hayward, Admiral, Chief of Naval Operations; Appellants.

Donald H. LAJOIE, Appellee,

v.

Casper W. WEINBERGER, Sec. of Defense; John F. Lehman, Jr., Sec. of Navy; Admiral Thomas M. Hayward, Chief of Naval Operations; Appellants.

James M. ELWOOD, Appellee,

v.

John F. LEHMAN, Jr., Sec. of Navy; Thomas M. Hayward, Admiral; Appellants.

Nos. 82–2028 to 82–2030.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1983.

Decided Jan. 13, 1984.

Rehearing and Rehearing En Banc Denied March 2, 1984.

See also D.C., 525 F.Supp. 1148.

Margaret E. Clark, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Elsie L. Munsell, U.S. Atty., Alexandria, Va., Anthony J. Steinmeyer, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., on brief), for appellants.

Thomas B. Kenworthy, Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., Ronald L. Bub, Saul & Barclay, Fairfax, Va., on brief), for appellees.

Before WINTER, Chief Judge, HALL, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Three Navy servicemen (Amidon, Lajoie and Elwood) were ultimately granted writs of habeas corpus after the Navy unilaterally extended their enlistments. We had occasion to affirm the grants as to Amidon and Lajoie. *See Amidon v. Lehman*, 677 F.2d 17 (4 Cir.1982). Thereafter, the district court granted the petitions of all three for fee awards under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Secretary appeals, contending that the awards are improper under EAJA because two of the applications were not timely filed, and because the Government's position in all three cases was substantially justified. We hold that the Government's position in each case was substantially justified. We therefore reverse without reaching the question of timeliness.

I.

The underlying facts of this case are set forth in *Amidon v. Lehman, supra.* Succinctly stated, Amidon, Lajoie and Elwood were implicated in the March, 1980, murder of a Navy serviceman in Spain. Under "The Agreement in Implementation of the Treaty of Friendship and Cooperation between Spain and the United States of America" (the Agreement), the United States had primary jurisdiction over the suspects. Recognizing this, the Spanish courts surrendered custody of the men to the United States after conducting an initial inquiry. Because it failed to comply with statutory speedy trial requirements, however, the Navy was unable to court-martial the men. Instead, it unilaterally extended their active duty periods, relying on Article XVIII, ¶ 3 of the Agreement, which provides:

The custody of a member of the United States Personnel in Spain, who is legally subject to detention by the military authorities of the United States and over whom Spanish jurisdiction is to be exercised, shall be the responsibility of the United States military authorities, at their request, until the conclusion of all judicial proceedings, at which time the member will be delivered to Spanish authorities at their request for execution of the sentence . . . .

When the Navy extended the suspects' service commitments, it was unclear whether Spanish authorities could recover jurisdiction under the Agreement and whether they would prosecute if they could.

In April, 1981, the three suspects filed petitions for writs of habeas corpus in the Eastern District of Virginia. The district court rejected that of Elwood, but granted those of Amidon and Lajoie. The decision in Elwood's case, affirmed by us on appeal, was that the Navy properly continued Elwood on active duty because his voluntary enlistment had neither expired nor been canceled. *See Elwood v. Lehman,* 673 F.2d 1309 (4 Cir.1982). The district court's decision in the Amidon and Lajoie cases turned on construction of the language "over whom Spanish jurisdiction is to be exercised." The district court held that the Agreement did not authorize the men's detention because the exercise of Spanish jurisdiction was at best a possibility, not a certainty. Accordingly, it issued the writs.

On appeal, we affirmed, albeit for different reasons. We held that the Agreement authorizes detention of American personnel for Spanish authorities only when two conditions are met—when the armed service in question has *independent* authority to detain the service member and when "a determination [is] made that Spanish jurisdiction is to be exercised." *Amidon v. Lehman,* 677 F.2d, at 19. We did not explore the parameters of the second condition, for we held that the Navy had no independent basis for detaining Amidon and Lajoie. *Id.* at 20. This holding was based on a determination that the Bureau of Naval Personnel Manual (BUPERSMAN) article that purported to authorize these involuntary extensions was itself invalid. *Id.* Under 32 C.F.R. § 700.1201, any BUPERSMAN article that amends a Navy regulation is void; this article, we concluded, "amended" 32 C.F.R. § 730.4(e) by increasing the bases for extending enlistments.

After our decision in *Amidon,* the Secretary petitioned for rehearing, asking for an opportunity to contest our construction of the Agreement and the provision of the Code of Federal Regulations under which we invalidated the BUPERSMAN article at issue. We, however, denied the petition.

While the appeals concerning Amidon and Lajoie were pending, Elwood's voluntary enlistment period expired, and the Navy unilaterally extended his tour of active duty. He again sought habeas relief, which the district court eventually granted. When he applied for the writ, we had not yet decided *Amidon.* The Navy, relying on the district court decision in *Amidon,* took the position that it could detain Elwood because Spain had by then decided to prosecute. When our decision in *Amidon* was filed, the position of the Spanish authorities became irrelevant; the district court, accordingly, granted Elwood's petition.

After hearing argument on the three petitions for attorneys fees under EAJA, the district court delivered an oral opinion granting the petitions. It ruled that the Navy had been negligent in its prior handling of the case by requesting Spain to surrender jurisdiction to the United States and then failing to comply with United States law requiring a speedy trial. In its view, one who had negligently brought about the litigation for which fees were sought could not be "substantially justified" in its position in that litigation. Accordingly, the district court awarded fees against the Secretary.

## II.

Our decision in this case is controlled by the "substantially justified" test contained

in § 2412(d)(1)(A) of EAJA.[1] In *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73 (4 Cir.1982), we considered two aspects of § 2412(d)(1)(A) which are relevant in this case. First, with respect to the "substantially justified" test, we quoted from the legislative history of EAJA:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis in both law and fact, no award will be made.

(H.R.Rep. No. 1418, 96th Cong., 2d Sess. 14 (1980) *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4993). *Id.* at 75. We also commented on the meaning of the phrase "position of the United States", and held that it meant "the government's position as a party in prosecuting or defending the litigation at whatever level is under review for the awarding of attorney's fees." *Id.* at 75 (footnote omitted). Thus we held that, to escape liability under EAJA, the Government must show, not that its underlying action was substantially justified, but that its position as a party in prosecuting or defending the action was.

■ We agree with the Government that, in the instant cases, the district court improperly looked to prelitigation events in evaluating the Government's position. Specifically, it concluded "they [the Government] can't say that we were substantially justified where their own negligent handling of the case was the reason for the litigation." We think, however, that whether the Government found itself in court in part because of its "negligent handling of the case" is simply beside the point under *Tyler Bros.* EAJA does not, like the Federal Tort Claims Act, make what the Government, through its agents, did or failed to do before litigation the principal concern. Rather, EAJA is restricted to a consideration of the Government's position with respect to the litigation once it has ensued.

### III.

■ We also hold that the Government has shown a "reasonable basis both in law and fact" for its position at both the trial and appellate levels of these cases. The successful petitioners first complain that the Government's original factual position was not substantially justified. They note that, when the Navy extended Amidon and Lajoie's enlistments, it claimed to hold the men for Spanish authorities pursuant to its obligation under the Agreement, even though Spanish authorities then had disclaimed jurisdiction. Although Spain had deferred to United States jurisdiction, it certainly was unclear whether Spain could or would reassert its jurisdiction. The Government claims that it interpreted the Agreement to require it to hold the men until that determination had been made. The factual basis for the Government's position, then, was not, as the three contend, that Spain had jurisdiction, but that it thought the Agreement obliged it to hold the men. The Government's factual and legal positions at the district court level thus must stand or fall together.

We consider the Government's legal position that the Agreement's language arguably required the Navy to detain them as "individuals over whom Spanish jurisdiction is to be exercised" was reasonable, though not persuasive, on its face. The State Department supported this interpretation, saying:

> A good faith implementation of our obligations under the Agreement requires that U.S. military authorities provide the Government of Spain with a reasonable opportunity to determine whether it wishes to exercise jurisdiction. Removal

---

1. The full text of that section is:

   Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

of the petitioner[s] from Spain at this time, therefore, would be inconsistent with the Agreement, and harmful to our relations with the Government of Spain.[2] The State Department's endorsement of the Government's interpretation is further evidence of its reasonableness. We therefore hold that the Government was substantially justified in seeking a judicial resolution of the question.

The Government failed, of course, to consider that it lacked the authority to hold the men in order to extend to the Government of Spain the opportunity to exercise its jurisdiction. The Government did not read the Agreement to require an independent basis for it to detain servicemen, and it did not read the relevant portion of BUPERSMAN as invalid under 32 C.F.R. § 700.1201. It is significant that, while neither of those considerations occurred to the Government prior to the oral argument before the Fourth Circuit panel in *Amidon,* they also had not occurred to the district court or to Amidon, Lajoie or Elwood. They were raised initially by us, and as subsequent proceedings demonstrated, they were not self evident.

In a petition for rehearing, the Government argued that we had misconstrued the Agreement and the Code. First, it maintained that "a member of the United States personnel in Spain, who is legally subject to detention by the military authorities of the United States" was intended only to differentiate between civilian and military personnel. Noting that Spain and the United States formerly had an agreement covering both civilian and military personnel, the Government said the renegotiated agreement used the quoted language because American judicial decisions had held military detention of civilian personnel illegal. Second, the Government contended that 32 C.F.R. § 700.1201, which invalidates any BUPERSMAN article that amends "any provision of Navy Regulations," referred only to *United States Navy Regulations,*

which are adopted by the Secretary of the Navy, and not to the navy regulation that the BUPERSMAN article at issue "amended." In support of this theory, it cited a number of cases distinguishing the specific from the generic use of "navy regulations."

We were not impressed by these arguments, and we denied the petition for rehearing. Yet the arguments are not unreasonable. Thus, we conclude that the Government's position throughout this litigation has been substantially justified. We therefore reverse the district court's fee awards.

REVERSED.

**2.** Letter from James H. Michel, Deputy Legal Adviser, Department of State, to the district

court (April 29, 1981).