**Louis J. D'AMICO, Regional Director of Region 5 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD**

v.

**INDUSTRIAL UNION OF MARINE AND SHIPBUILDING WORKERS OF AMERICA, AFL–CIO.**

**Div. A. No. M–84–1821.**

United States District Court, D. Maryland.

March 14, 1986.

Richard L. Ahearn, Regional Atty., Region 5, N.L.R.B., Baltimore, Md., for plaintiff.

Mary Ellen Signorille and Abato, Rubenstein & Abato, Baltimore, Md., and Michael Brodie and Freedman & Lorry, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Pending in this action in an Application for Attorneys' Fees pursuant to the Equal Access to Justice Act (the EAJA), 28 U.S.C. § 2412(d), as amended, filed by Industrial Union of Marine and Shipbuilding Workers of America, AFL–CIO (the National Union) (Paper No. 41). Louis J. D'Amico, Regional Director of Region 5 of the National Labor Relations Board (the Regional Director), has filed a Motion to Dismiss the Application and an Amended Motion to Dismiss the Application (Paper Nos. 42 and 43). The National Union has filed a Re-

sponse to the motion (Paper No. 45). No hearing is necessary to decide the motion. Local Rule 6(G).

This application for attorneys' fees stems out of a petition to adjudge the National Union in civil contempt and for injunctive relief (Paper No. 35), in which the Regional Director asserted that certain acts of the National Union were motivated by a desire by the National Union to retaliate against, and to remove from office, the officials of Local 33 who negotiated and administered the local's collective bargaining agreement with Bethlehem Steel Corporation's Sparrows Point, Maryland Shipyard. The Regional Director contended that such acts of the National Union were in violation of this court's Order of May 10, 1984, as clarified on March 4, 1985. For reasons set forth in a Memorandum dated September 30, 1985 (Paper No. 40), this court on September 27, 1985, issued an Order denying the Regional Director's petition (Paper No. 39).

The Regional Director asserts that the application should be dismissed for several reasons. He contends (1) that the National Union has not sufficiently established its eligibility for an award of fees and expenses under EAJA; (2) that the Regional Director was substantially justified in initiating the contempt petition; (3) that special circumstances exist which make an award unjust; and (4) that the National Union has not submitted a proper accounting of the fees and expenses it is claiming and is claiming fees and expenses in excess of those to which it would be entitled even if it were found to be entitled to an award.[1]

Section 2412(d)(1)(A) of Title 28, United States Code, provides:

"Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the

---

1. While the National Union failed to allege in its petition, as required by 28 U.S.C. § 2412(d)(1)(B), that the Regional Director's ac- tions were not substantially justified, it does not appear that the Regional Director relies on this default in his motion.

United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

Initially, this court finds that the National Union is a prevailing party, since the Regional Director's Petition for Contempt was denied. This issue does not appear to be in dispute. The Regional Director does dispute, however, whether the National Union is a "party," eligible to receive fees and expenses under the EAJA.

## I. *Eligibility under the EAJA*

■ In its application, the National Union alleges that it is a prevailing party under § 2412(d) as most recently amended and that at no time relevant to the application did the National Union's net worth exceed $7,000,000.00.[2] The Regional Director asserts that the application is insufficient, because it fails to allege that the National Union has less then 500 employees, because the National Union is not the real party in interest, and because the National Union has not sufficiently demonstrated its own eligibility.

The National Union has attached to its Response to the motion the affidavit of Ernest H. Soderstrom, who performs accounting services for the National Union and who avers that at approximately July 1985, the aggregate net worth of the National Union and its local affiliates was $4,778,727.00 and that since that time the net worth has declined (Paper No. 44, Soderstrom Affidavit, ¶ 6). He further avers that during the year 1985, the maximum number of persons employed on a full-time or regular part-time basis by the National Union and its affiliated locals has not exceeded 45 (*id.*, Soderstrom Affidavit, ¶ 7). The Regional Director, however, continues to assert that the National Union has not

met the threshold statutory requirements of establishing its eligibility for an award.

Section 2412(d)(1)(B) provides:

"A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses are computed. The party shall also allege that the position of the United States was not substantially justified."

Section 2412(d)(2)(B) defines a "party" as, *inter alia,*

"(ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed...."

The Regional Director's argument that the National Union's application is insufficient because it does not allege that it has less than 500 employees has been rendered moot by the statement in the Soderstrom affidavit that the National Union and its Local affiliates employed no more than 45 employees during the relevant time period. Similarly, the Regional Director's argument that the real party in interest is not the National Union, but is the National Union combined with all of its affiliated local unions throughout the United States, has been rendered moot by the averments in the Soderstrom affidavit that the National Union and its local affiliates together have insufficient net worth and employees to exceed the statutory requirements.

---

**2.** There is, apparently, no dispute that the application for attorneys' fees at issue here is governed by § 2412(d) as recently amended by Pub.L. No. 99–80, 99 Stat. 183 (1985), because the case was pending when these amendments to the EAJA were enacted. *See* Pub.L. No. 99–80, § 7(a), 99 Stat. at 186.

Finally, the Regional Director argues that because § 2412(d)(1)(B) requires that the party "show" that it is eligible to receive an award under the section, in contrast to the requirement that it "allege" that the position of the United States was not substantially justified, the National Union must submit more than an affidavit stating that it has a net worth of less than $7,000,000.00 and employs less than 500 persons. The Regional Director asserts that the National Union, in order to meet its threshold statutory requirement of "showing" that it is eligible to receive an award, must submit a balance sheet showing its net worth. It further appears that the Regional Director argues that since the National Union has not sufficiently demonstrated its eligibility in its application, and the 30-day limit in § 2412(d)(1)(B) for submitting an application has expired, it should not be permitted to supplement its application, and, therefore, it has failed to submit within 30 days an application which establishes its eligibility for an award. Because it appears that such restrictions would conflict with the purposes of the EAJA, these arguments are without merit.

While it is clear that the statute places the burden of establishing eligibility on the applicant, it would impose unnecessarily burdensome restrictions on recovery to require an applicant to prove, to the government's satisfaction and in its initial application for fees and costs under the EAJA, that the applicant met all of the eligibility requirements. Often, when a party applies for fees under the EAJA, there is no serious question as to eligibility under § 2412(d)(1)(B). See, e.g., Hirschey v. F.E. R.C., 760 F.2d 305, 309 (D.C.Cir.1985). Accordingly, there is often no argument by the government that the applicant is not eligible, and, in such cases, other courts have accepted as sufficient proof an applicant's affidavit of net worth, see, e.g., Donahue v. Heckler, 600 F.Supp. 153, 157 (E.D. Wis.1985); Johnson v. Secretary of/and U.S. Department of HUD, 594 F.Supp. 265, 267 (E.D.La.1984), and even an affiant corporation's assertion that it meets the net worth and maximum employee eligibility requirements. See Trident Marine Construction, Inc. v. District Engineer, United States Army Corps of Engineers, 587 F.Supp. 799, 803 (W.D.Mich.1984). Cf. Carlisi v. Secretary of Health and Human Services, 583 F.Supp. 135, 139 n. 7 (E.D.Mich.1984) (dismissing the application for numerous flaws, but noting that although the applicant also failed to provide the court with any basis to determine if plaintiff's net worth was less than $1 million, the error was not fatal because the court could take judicial notice that plaintiff, as a recipient of state and federal government assistance, must have a net worth of less than $1 million). In the vast majority of cases, in which such eligibility is not questioned, it would require a significant amount of effort to be expended unnecessarily to require a showing as suggested by the Regional Director. In this court's view, an applicant's affidavit which indicates eligibility should be sufficient to meet the applicant's burden, absent some at least minimally factually supported argument by the government that the applicant is not eligible.

In recently reenacting the provisions of § 2412(d), Congress noted that "[t]he primary purpose of the Act [is] to ensure that certain individuals, partnerships, corporations, businesses, associations, or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights." H.R.Rep. No. 120, 99th Cong., 1st Sess. 4 (1985), reprinted in 1985 U.S.Code Cong. & Ad.News 132, 132–33. Dismissing an application because the applicant, although possibly eligible, did not submit an affidavit of net worth or number of employees until such eligibility was challenged would constitute a miserly interpretation of the language of the statute and would violate the announced legislative intent of the Act. It appears more consistent with the purposes of the Act to find that, while it is advisable that applicants for EAJA fees indicate in their application, by affidavit or

allegation, that they are eligible to receive such fees, the applicant need not prove such eligibility until some objection to their eligibility is raised by the government. Therefore, these arguments are without merit.[3]

## II. *Substantial Justification and Special Circumstances*

■ Section 2412(d)1)(A) requires the court to award fees and other expenses to a prevailing party, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The Regional Director here argues both that its action in initiating the petition for contempt was substantially justified, and that special circumstances exist in this case which make an award unjust.

Initially, this court must determine the proper standard to apply in determining whether the Regional Director's actions were substantially justified. Under the EAJA as initially enacted, courts were divided on the meaning of the term "substantially justified." The Fourth Circuit, relying on language from the legislative history of the Act, found that the test was "essentially one of reasonableness." *Amidon v. Lehman*, 730 F.2d 949, 952 (4th Cir.) (*quoting* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 14 (1980), *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4993), *cert. denied,* —— U.S. ——, 105 S.Ct. 507, 83 L.Ed.2d 398 (1984); *Tyler Business Services, Inc. v. NLRB*, 695 F.2d 73, 75 (4th Cir.1982) (also quoting this section of H.R. Rep. No. 1418). When the Act was reenacted, Congress, noting the division among the courts, disagreed with the position taken by the Fourth Circuit, stating:

"Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of 'substantial justification.' Several courts have held correctly that 'substantial justification'

means more than merely reasonable. Because in 1980 Congress rejected a standard of 'reasonably justified' in favor of 'substantially justified,' the test must be more than mere reasonableness....

The Committee expects that the determination of what is 'substantially justified' will be decided on a case-by-case basis due to the wide variety of factual contexts and legal issues which make up government disputes."

H.R.Rep. No. 120, 99th Cong., 1st Sess. 9 (1985), *reprinted in* 1985 U.S. Code Cong. & Ad.News 132, 138 (footnote omitted). Thus, while it appears that the standard to be applied in determining whether the Regional Director was substantially justified in initiating the contempt petition is somewhat higher than mere reasonableness, it does not appear to be much higher. There is nothing in the legislative history to suggest, for example, that the government must prevail, as the applicant apparently suggests, or that the Fourth Circuit's analysis was incorrect in its observation that:

"The legislative history ... admonishes that the standard which it prescribes 'should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing' "

*Tyler Business Services, Inc.*, 695 F.2d at 75 (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4990).

In the present case, the court concludes, after a review of the record, that the Regional Director's action in initiating the contempt petition was substantially justified. The petition alleged that the National Union's actions in vacating Local 33's May

---

**3.** While this court finds that the applicant has met its initial burden of showing eligibility, this, of course, does not preclude the government from arguing that the applicant does not, in fact, meet the eligibility requirements, assuming it has some competent evidence to support its argument. The burden of persuasion, of course, remains with the applicant.

1983 election of officers and in bringing internal union charges against certain members of Local 33 were motivated by the National Union's desire to retaliate and remove from office the officials at Local 33 because they had negotiated a collective bargaining agreement with Bethlehem Steel for the Sparrows Point Shipyard. The assertion by the National Union that there were no real credibility issues and that there was never any conflict as to any relevant fact involved in the contempt petition is unfounded.

Although the National Union asserts that the Regional Director's case was based entirely on perjured testimony, this was not so found by the court. In fact, this court found that at least part of the motivation for the National Union's actions against certain officers of Local 33 was in retaliation for the negotiation of the collective bargaining agreement, but found, as a result of its resolution of credibility conflicts, that a dual motive for the National Union's actions existed, stating:

> "The court is persuaded by the evidence that the actions taken by the Respondent would have been taken under the circumstances irrespective of the antipathy between the Respondent and its president, Arthur Batson, and the top officials of Local 33 as a result of the negotiation of the aforesaid collective bargaining agreement."

(Paper No. 40 at 6). While most of the facts in the case were stipulated, the National Union is incorrect in its statement that "the decision in this case dismissing the contempt petition was not based on any credibility resolution by the Court as to disputed facts," and that based on those facts which were undisputed, the inferences drawn by the court were the only conceivable inferences which could be drawn (Paper No. 44 at 7–9). As noted above, at least some credibility resolutions were made in favor of the Regional Director in the court's conclusion that the National Union's actions were motivated, at least in part, by a desire to retaliate against the officials of Local 33. In sum, this court believes that bona fide credibility disputes did exist, and that the Regional Director was substantially justified in believing, from the evidence available to him, that the National Union's actions were in violation of this court's injunction.

In addition, this court finds that special circumstances existing in this case warrant a finding that no fees or expenses be awarded. Unlike most circumstances in which EAJA applications are made, the present controversy arose over a question of whether the applicant had violated a court order, specifically, whether the National Union had violated this court's order that it not interfere with the collective bargaining agreement at issue or retaliate against the officials of Local 33 who negotiated that contract. The Regional Director reasonably believed that certain actions taken by the National Union were being taken to retaliate against the officials of Local 33, and, therefore, believed that those actions were in violation of this court's Order. Under such circumstances, this court believes that the Regional Director had an obligation, both to the public and to this court, to present the matter to this court so that it could determine whether there had, in fact, been a violation of this court's Order. This court's denial of the petition for contempt cannot, in hindsight, negate the Regional Director's obligation, in light of his reasonable belief that a violation had occurred, to pursue the matter in court.

Accordingly, it is this 14th day of March, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That the Regional Director's Motion to Dismiss the National Union's Application for Attorneys' Fees be, and the same is hereby, GRANTED.

2. That the Clerk mail a copy of this Memorandum and Order to counsel for the parties.