Ed FIELDS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 273–88C.

United States Court of Federal Claims.

Sept. 30, 1993.

Herb Lombard, Eugene, OR, attorney of record, for plaintiff.

Patricia L. Petty, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### Introduction

This case is now before the court on plaintiff's May 26, 1992 application for attorney fees in the amount of $22,831.00 under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1991 ed.), and defendant's opposition thereto. Previously, in June 1991, following an appeal to this Court on May 6, 1988, from an adverse contracting officer's decision on May 8, 1987, the defendant admitted liability, in part, for certain of plaintiff's claims and thereby paid the plaintiff $4,400, plus interest. Thereafter, on April 17, 1992, the parties filed a joint stipulation for entry of judgment on the merits. Based upon the foregoing stipulation, on April 27, 1992, the court entered judgment on the merits in favor of the plaintiff in the amount of $13,100, plus interest. Pursuant to the set-tlement agreement, plaintiff retained the right to pursue attorney fees under the EAJA.

■ As an initial matter, and to prevail, plaintiff as a party *must* show that he meets the following eligibility requirements of the EAJA:

(i) that an application for fees was filed within thirty (30) days of final judgment— (a) alleging that he was a prevailing party, (b) averring an amount sought, and (c) containing an itemized statement from an attorney stating actual time expended and the rate at which fees are charged (plaintiff must allege that defendant's position was not substantially justified);

(ii) that plaintiff as a party individual or an unincorporated business had a net worth which did not exceed $2,000,000 and $7,000,000, respectively, at the time the civil action was filed (May 6, 1988);

(iii) that as such party, he incurred such fees in a civil action; and

(iv) that the unincorporated business, at the time of the filing of this action, did not have more than 500 employees.

■ If plaintiff establishes that he is eligible, defendant must then go forward and show that its position was substantially justified or that special circumstances exist which would make an award unjust, in order to preclude an EAJA award. 28 U.S.C. § 2412(d)(1)(B) and *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1987). Failing such by the defendant, the final step in the analysis is the determination of the amount of the award. After a careful review of the submissions of the parties, the court is constrained to deny plaintiff's application for failure to sufficiently establish eligibility.[1]

### Facts

On September 14, 1984, plaintiff Ed Fields was awarded contract No. 53–04N7–

---

**1.** These eligibility requirements were intended to preclude recovery of attorney fees and expenses by those persons who could afford the cost of litigation. *Unification Church v. INS,* 762 F.2d 1077, 1082 (Fed.Cir.1985); *Design and Production Inc. v. United States,* 20 Cl.Ct. 207, 210 (1990).

4-56 by the United States Forest Service, United States Department of Agriculture (Forest Service), to provide site preparation services for 18 acres of land, which was the proposed site of a seed orchard. Work under the contract included the removal of existing trees, brush, and stumps, most of which were to be burned. The contract also required ripping, leveling, surface disking, and cover crop seeding. The contract was modified four times based upon a specification change therein, additional work, and alterations in the contract price caused by reduction in work performed.

There were differing opinions between plaintiff and the contracting officer as to expenses plaintiff claimed to have incurred in connection with the contract modifications. Plaintiff was to remove *all rocks, eight inches or larger,* which were found on 30% of the total acreage. However, after commencing the rock removal process, plaintiff alleged that he found and removed rocks eight inches (8") or larger on the *entire site.* Thus, plaintiff claimed that he was owed an additional $22,010, the cost of removing the extra rocks, the reripping of an area, and the additional work done on .72 of an acre. In addition to the foregoing, plaintiff claimed expenses of $1,384 for the cost of an on-site 1,500–gallon water tank truck, and $5,200 for the added expense of carrying out all burning activities at night. The record shows that the presence of the truck and night burning were both requirements of the District Fire Management Officer. Finally, plaintiff also alleged that he was wrongfully denied the full contract price for disking and seeding, and other additional work.

The contracting officer issued his final decision, regarding plaintiff's claims, on May 8, 1987, awarding to plaintiff $1,710 for removal of the extra rocks, and $1,750 of the $5,650 requested for the additional work performed. The claims regarding the truck rental, the night burning, and the balance of the contact price for disking and seeding were all denied. Plaintiff's addi-tional award of $3,460 by the contractor was reduced to $1,612.62 due to an alleged overpayment for the seeding.

Within one year after the contracting officer's decision on May 8, 1987, plaintiff filed an appeal to the U.S. Claims Court[2] on May 6, 1988, requesting payment of $34,241.03, the difference between the claim for damages submitted to and the amount allowed by the contracting officer. The government originally denied any and all liability in its answer filed on July 5, 1988. Thereafter, the parties filed a joint preliminary status report averring that both parties wished to conduct discovery. The court ordered discovery on August 19, 1988, which was to be completed on or before December 2, 1988. Following thereon, preliminary offers were made and rejected by both plaintiff and defendant. In fact, the parties agreed to settle *all claims for $17,500 on May 23, 1989,* which was inclusive of all fees and costs. However, five months later, on October 17, 1989, the government's attorney informed the plaintiff that he was unable to secure approval by his superior of the proposed settlement. Shortly thereafter, on November 7, 1989, the government served on plaintiff Defendant's Offer of Judgment *in the amount of $12,600, inclusive of attorney fees and costs,* which, of course, was not accepted. Plaintiff failed to file this Offer of Judgment with the Clerk of the Court.

Approximately three and one-half (3½) months later, on February 23, 1990, defendant filed a motion for summary judgment, which took approximately nine (9) months to fully brief. Plaintiff filed his opposition on July 31, 1990, and the defendant's reply brief was filed on November 6, 1990. On November 7, 1990, the government filed Defendant's Amended Proposed Findings of Uncontroverted Fact, in which some of plaintiff's claims were conceded.

On November 19, 1990, the court held a status conference and, the next day, entered an order directing the parties to exchange written settlement proposals. De-

---

**2.** Pursuant to the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), the name—"United States Claims Court"—was changed to—"United States Court of Federal Claims."

fendant, on February 26, 1991, withdrew its summary judgment motion without prejudice, and thereafter moved to proceed with discovery. Requests for production of documents were served, and the documents requested were produced by both sides in late 1991. In June 1991, plaintiff received a check for $4,400, plus interest, for additional claims to which the defendant conceded in part.

More than six (6) months later, on February 19, 1992, the government offered to settle the remaining claims for $13,100 ($17,500 less $4,400 which had recently been paid to plaintiff). This offer of settlement was substantially identical to the settlement offer originally made by plaintiff in May 1989. Fortunately, this second time around, on April 17, 1992, the parties filed a Joint Stipulation For Entry Of Judgment, and settled the remainder of the case for $13,100, plus interest, with each party to bear its own costs. In this settlement agreement, however, plaintiff retained the right to pursue attorney fees, which overall settlement was less favorable to defendant when compared to the aborted settlement proposal of May 23, 1989.[3] On April 27, 1992, the court entered judgment for plaintiff in the amount of $13,100, plus interest. The plaintiff timely filed his EAJA application on May 26, 1992, along with the required affidavits within 30 days of the date of entry of judgment.

### ·Contentions of the Parties

#### Plaintiff

Plaintiff duly alleges in his application that he is the prevailing party, that he incurred compensable fees, and that his individual net worth and the net worth of the unincorporated business he owns are appropriately below statutory limits (i.e., $2,000,000 and $7,000,000, respectively). Plaintiff further states that his unincorporated business did not have more than 500 employees at the time the civil action was filed. Finally, he claims that the government's position was not substantially justified, alleging that the government unjustly delayed settlement for over three and one-half (3½) years. Plaintiff requests that any attorney fee awards should be adjusted upward for inflation, and also contends that there are no special circumstances that make an award of fees unjust in this case.

#### Defendant

Conversely, defendant maintains that plaintiff is ineligible for an award of attorney fees under the EAJA. Specifically, defendant avers that plaintiff failed to present sufficient probative evidence to establish by the requisite quantum of proof that he (plaintiff) is a "party" within the contemplation of the EAJA. 28 U.S.C. § 2412(d)(2)(B). Moreover, the government also asserts that its overall position was substantially justified, claiming that the contracting officer's denial of certain of plaintiff's claims was reasonable, and that its position before the Claims Court did not cause unjustifiable delay. 28 U.S.C. § 2412(d)(1)(A) and (B). Defendant further alleges that plaintiff is not entitled to recover attorney fees due to a lack of contemporaneous records evidencing incurred expenses, failure to present sufficient probative evidence of the fees charged, and duplicative requests for fees. Finally, defendant prays that if the court finds that plaintiff is entitled to attorney fees, plaintiff should not be allowed the cost of living allowance (COLA) increases, or, in the alternative, if allowable, such COLA increases should be calculated using only the local consumer price index figures.

#### Scope of the Court's Opinion

We find that the record is clearly probative of the following facts: (1) Plaintiff did file a timely application for fees; (2) he alleged that he was the prevailing party [4]

---

3. From its inception, a total of five different government counsel were assigned to this case over a period of four years. In fact, between February 1991 and February 1992, a one-year period, three different government attorneys were assigned.

4. In fact, in its response, defendant categorically admitted this fact when it stated—"[w]e do not dispute that Mr. Fields may be considered to be a 'prevailing party' within the meaning of 28 U.S.C. § 2412(d)(1)(A)," citing to *Hensley v. Eck-*

and that the position of the United States was not substantially justified; and (3) he attached to said application an itemized statement setting forth the alleged time expended, the hourly fee rates, and the amount sought. 28 U.S.C. § 2412(d)(1)(B).

On the other hand, as can be seen, defendant, for several reasons, contends that plaintiff is *not* entitled to relief, any one of which, as a matter of law, is fatal to his cause. In this connection, defendant contends that plaintiff should not prevail because—(i) it has not been established that he is a "party" as defined in 28 U.S.C. § 2412(d)(2)(B); (ii) defendant's position is substantially justified; and (iii) such alleged fees are not established by contemporaneous records.

### Discussion

### Entitlement to an EAJA Award

■ Plaintiff's entitlement to an EAJA award pursuant to 28 U.S.C. § 2412, given his application, is governed by the following statutory provisions:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application[5] for fees and other expenses which shows that the party is a prevailing party and is eligible

to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

\*    \*    \*    \*    \*    \*

(2) For purposes of this subsection—

(A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee);

(B) "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more

---

*erhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

**5.** The procedural requirements of the EAJA are further explicated in the Rules of the U.S. Court of Federal Claims (CFC), specifically Rule

81(e)(1), wherein it provides that—"[t]he application and supporting statements shall be under oath. Each item shall be separately stated and supported."

than 500 employees at the time the civil action was filed; ...

\*     \*     \*     \*     \*     \*

(E) "civil action brought by or against the United States" includes an appeal by a party, other than the United States, from a decision of a contracting officer rendered pursuant to a disputes clause in a contract with the Government or pursuant to the Contract Disputes Act of 1978[.]

■ In *Scherr Constr. Co. v. United States*, 26 Cl.Ct. 248, 250 (1992), Judge Nettesheim stated that:

> The purpose of the EAJA is to lift the "bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute." *Levernier Constr., Inc. v. United States*, 947 F.2d 497, 502 (Fed.Cir.1991). As a waiver of sovereign immunity, *the Act must be strictly construed, allowing for the award of fees "only to the extent explicitly and unequivocally provided." Id.* (quoting *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1386 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).

(emphasis added). *Also see Levernier Construction, Inc. v. United States*, 947 F.2d 497, 502 (Fed.Cir.1991). We agree with the foregoing, and, in passing on the critical issue(s) raised by the defendant, we shall construe the Act accordingly. Additionally, our threshold observation is that, if defendant prevails on any one of said issues, *supra*, such circumstance will, of course, be fatal to plaintiff's entitlement under the Act. The court will address, if appropriate, said issues seriatim—the first being whether plaintiff established proof by a preponderance of the evidence that he, as an individual and as the owner of an unincorporated business at the time the civil action was filed, had a net worth which did not exceed $2,000,000 and $7,000,000, respectively.

Defendant strenuously contends that plaintiff is not a § 2412(d)(2)(B) "party" because, upon submission of his application, all that was filed was "an affidavit where he states that his individual net worth was less than $2 million, and, that the net worth of his unincorporated business did not exceed $7 million nor did he employ more than 500 employees." In that regard, defendant is correct that the only proof of plaintiff's and his unincorporated business' net worth of record upon the filing of his application was a one-page self-serving conclusory narrative affidavit as to the extent of his net worth.

Plaintiff's reply brief takes the defendant to task for the "implied suggestion of Plaintiff's untruthfulness," averring that "the Government has not offered a scintilla of evidence that Plaintiff's net worth or the number of his employees exceeds the EAJA limits." (Reply Brief, p. 1). Because of such alleged failure to offer any evidence to the contrary, plaintiff strenuously contends that "the sworn statements in the applicant's Affidavit directly addressing and satisfying the EAJA requirements should be a sufficient showing of his 'party' status under the Act." In support of his position, plaintiff cites to *D'Amico v. Ind. U. of Marine & Shipbuilding Workers*, 630 F.Supp. 919, 922–23 (D.Md.1986), for the proposition that on the same question the court there held that such a showing was probative:

> Finally, the Regional Director [NLRB] argues that because § 2412(d)(1)(B) requires that the party "show" that it is eligible to receive an award under the section, in contrast to the requirement that it "allege" that the position of the United States was not substantially justified, the National Union must submit more than an affidavit stating that it has a net worth of less than $7,000,000 and employs less than 500 persons. The Regional Director asserts that the National Union, in order to meet its threshold statutory requirement of "showing" that it is eligible to receive an award, must submit a balance sheet showing its net worth. It further appears that the Regional Director argues that since the National Union has not sufficiently demonstrated its eligibility in its application, and the 30–day limit in § 2412(d)(1)(B) for submitting an application has ex-

pired, it should not be permitted to supplement its application, and therefore, it has failed to submit within 30 days an application which establishes its eligibility for an award. Because it appears that such restrictions would conflict with the purposes of the EAJA, these arguments are without merit.

While it is clear that the statute places the burden of establishing eligibility on the applicant, it would impose unnecessarily burdensome restrictions on recovery to require an applicant to prove, to the government's satisfaction and in its initial application for fees and costs under the EAJA, that the applicant met all of the eligibility requirements. Often, when a party applies for fees under the EAJA, there is no serious question as to eligibility under § 2412(d)(1)(B). *See, e.g., Hirschey v. F.E.R.C.*, 760 F.2d 305, 309 (D.C.Cir.1985). Accordingly, there is often no argument by the government that the applicant is not eligible, and, in such cases, other courts have accepted as sufficient proof an applicant's affidavit of net worth, *see, e.g., Donahue v. Heckler*, 600 F.Supp. 153, 157 (E.D.Wis.1985); *Johnson v. Secretary of/and U.S. Department of HUD*, 594 F.Supp. 265, 267 (E.D.La.1984), and even an affiant corporation's assertion that it meets the net worth and maximum employee eligibility requirements. *See Trident Marine Construction, Inc. v. District Engineer, United States Corps of Engineers*, 587 F.Supp. 799, 803 (W.D.Mich.1984). *Cf. Carlisi v. Secretary of Health and Human Services*, 583 F.Supp. 135, 139 n. 7 (E.D.Mich.1984).... In the vast majority of cases, in which such eligibility is not questioned, it would require a significant amount of effort to be expended unnecessarily to require a showing as suggested by the Regional Director. In this court's view, an applicant's affidavit which indicates eligibility should be sufficient to meet the applicant's burden, absent some at least minimally factually supported argument by the government that the applicant is not eligible.

■ Several observations come to mind regarding the foregoing position of plaintiff. First, it is the plaintiff's burden to demonstrably establish, *prima facie*, that he meets the referenced "net worth" limitations. Secondly, we are not compelled to follow *D'Amico* and respectfully decline to do so in light of our admonishment that the "EAJA is a waiver of sovereign immunity which must be *strictly* construed." *Levernier Constr., Inc.*, 947 F.2d at 502 (emphasis added).

■ More importantly, the court disagrees with plaintiff's hospitable contention that the submission of his self-serving, non-probative affidavit alone is sufficient to establish his status as a "party" eligible for the award of fees under the EAJA. Plaintiff submitted a bland affidavit stating that his individual net worth, the net worth of the unincorporated business he owns, and the number of employees he retained all at the time the action was filed meet the eligibility requirements of 28 U.S.C. § 2412(d)(2)(B), but offered no supporting documentary evidence. A conclusory affidavit without supporting evidence is inadequate to establish such "party" status. Thus, a petitioner requesting fees under the EAJA *must* present sufficient evidence so that his or her net worth may be ascertained and verified by the court. *See Scherr Constr. Co.*, 26 Cl.Ct. at 250–51 (if a petitioner's unaudited, qualified balance sheet lacked sufficient information to enable the court to ascertain net worth, a necessary predicate to the award of attorney fees, *a fortiori* a lone affidavit is clearly insufficient); *United States v. Harper*, 569 F.Supp. 602, 604 (D.C.Pa.1983) (plaintiff's EAJA petition denied as he refused/failed to present evidence establishing net worth).

Despite the total failure of proof on this issue in his original application, plaintiff embellished his petition with a supplemental affidavit and various exhibits submitted with his Reply filed on August 14, 1992. In that reply, plaintiff included the following documents:

(i) a supplemental affidavit of Ed Fields reiterating that his individual and business net worth did not exceed $2,000,000 and

$7,000,000, respectively, at the time the action was filed. The affidavit contained a narrative purporting to explicate and establish his net worth;

(ii) a letter from his accountant to his attorney transmitting the following "documents for your analysis of Mr. and Mrs. Field's [sic] net worth on May 6, 1988":

(a) a copy of Tilth, Inc.'s corporate income tax return for the short year ended May 31, 1988, in which corporation plaintiff owns 100% of the stock, and

(b) a copy of the worksheet for the year ended December 31, 1988, for plaintiff's unincorporated business.

(We observe that said letter "suggest[ed] that [counsel] talk directly with Mr. Fields regarding assets that were owned as of May 6, 1988 that are not reflected in the documents"); and

(iii) a letter from Tri–County Banking Company, to which is attached a photocopy of a June 9, 1988 Individual Financial Statement previously requested by the bank with reference to a loan.

The court's review of the foregoing is that we clearly did not receive in plaintiff's reply brief an integrated balance sheet reflecting a systematic analysis of the assets and liabilities of plaintiff establishing his net worth in his individual capacity, nor did we receive such a balance sheet with respect to his unincorporated business. All that we received were two affidavits, to which were attached the referenced documents, *supra*, purporting to explicate the general range of "total net worth." In short, plaintiff has submitted a hodgepodge of data, but has failed to submit balance sheet(s) reflecting *all* assets and liabilities, owned individually and in his business capacity, at the time this civil action was filed. We see the deficiencies at bar to be more egregious than were found in *Scherr Constr. Co.*, 26 Cl.Ct. at 250–51, where the court there stated that:

The unaudited, qualified balance sheet provided by plaintiff [footnote omitted] does not enable the court to ascertain

plaintiff's net worth, which plaintiff must establish as a predicate for an award under the EAJA. 28 U.S.C. § 2412(d)(2)(B). Net worth, for purposes of the EAJA, is calculated by subtracting total liabilities from total assets. *City of Brunswick v. United States*, 849 F.2d 501, 503 (11th Cir.1988), *cert. denied*, 489 U.S. 1053, [109 S.Ct. 1313, 103 L.Ed.2d 582] ... (1989). Plaintiff's balance sheet displays assets as equalling liabilities. The failure to submit information consistent with generally accepted accounting principles is fatal to plaintiff's application. *See Continental Web Press, Inc. v. NLRB*, 767 F.2d 321, 323 (7th Cir. 1985).

■ The submissions of plaintiff on this issue leave the court with two unacceptable choices, neither of which it is inclined to accept. First, the court could undertake to prepare a balance sheet (net worth) based on the fragmentary submissions by plaintiff, or secondly, the court could speculate that the probabilities are that plaintiff meets the net worth eligibility requirements of § 2412(d)(2)(B) in both regards. On this record, neither option is appropriate, where, as here, the "overall application lacks specificity," *Scherr Constr. Co.*, 26 Cl.Ct. at 251; it appears that the revelations are not complete; and there is no affirmation that the reported assets and liabilities are total, complete, and accurate. More importantly, the provisions of Rule 81(e)(1), as delineated in footnote 5, *supra*, have not been fully complied with. It is not too much to require plaintiff to carry his burden by the requisite quantum of proof and comply with the Rules of this Court, particularly on a demand for attorney fees in the substantial amount of $22,-831.00. On this record, we believe that he has failed to do so.

*Conclusion*

Thus, for all of the foregoing reasons, plaintiff's application for an award of fees pursuant to the EAJA is hereby DENIED.[6]

---

6. Because plaintiff's deficiency in proof is fatal respecting whether he is a "party" as defined in

28 U.S.C. § 2412(d)(2)(B), it is, therefore, unnec-

The Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.

essary to reach the other issues raised by defendant.