**John DOE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–932C.**

United States Court of Federal Claims.

Nov. 5, 2002.

Peter S. Herrick, Miami, Florida, attorney of record for plaintiff.

Joseph Trautwein, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant.

## *OPINION*

REGINALD W. GIBSON, Senior Judge.

INTRODUCTION

The matter before us is an application for attorney fees and expenses pursuant to the Equal Access to Justice Act ("EAJA") recorded at 28 U.S.C. § 2412.[1] Plaintiff herein alleges that as the prevailing party in the underlying cause of action, an informant's award claim under 19 U.S.C. § 1619,[2] he is

---

1. 28 U.S.C. § 2412(d)(1)(A):
   "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

2. 19 U.S.C. § 1619(a) reads in pertinent part:
   "If any person who is not an employee or officer of the United States ... furnishes to ... any customs officer original information concerning any fraud upon the customs revenue,

now entitled to an award of the attending attorney fees and expenses. Defendant opposes any such entitlement on the ground that its litigation position in the underlying matter was substantially justified, thereby precluding plaintiff from any fee recovery.[3] As a matter of law and fact, we find that plaintiff has failed to meet the statutory financial eligibility requirement of the EAJA to establish his entitlement to an award of attorney fees and expenses. The plaintiff's fee application (on motion) is therefore DE-NIED.

### JURISDICTION

This court maintains jurisdiction over plaintiff's application for attorney fees and expenses by operation of law, having properly exercised jurisdiction in the underlying cause of action, to wit, a 19 U.S.C. § 1619 informant's claim. *See Everett Plywood Corp. v. United States*, 3 Cl.Ct. 705, 708 (1983). The operative statutory language of the EAJA provides that "attorney fees and other expenses may be awarded to the prevailing party in a civil action brought by or against the United States '*in any court having jurisdiction of that action.*'" *Id.* at 708 (citing 28 U.S.C. § 2412(d)(1)(A))(emphasis added). Irrefutably, plaintiff's original informant's award claim was properly before this court pursuant to 28 U.S.C. § 1419(a)(1) (granting the Court of Federal Claims jurisdiction over claims against the United States that are founded upon any Act of Congress).

It is, therefore, proper for us to consider plaintiff's subsequent application/motion for attorney fees and expenses.

### BACKGROUND

Judgment was issued in the underlying case on February 22, 2002, pursuant to a settlement agreement, whereby plaintiff accepted defendant's Rule 68 Offer of Judgment[4] for $7,000 plus fees and expenses that may be recoverable pursuant to 28 U.S.C. § 2412. Prior to the offer of judgment, the parties ardently maintained disparate positions respecting plaintiff's claim for an informant's award pursuant to 19 U.S.C. § 1619. It all began when plaintiff, a retired real estate broker living in Miami, Florida, contacted U.S. Customs Special Agent Carlos Adan, on April 3, 1995, regarding the alleged sale of yachts in violation of Customs fraud laws.[5] Plaintiff indicated that "*as a prospective buyer*" of a yacht,[6] he had reason to believe that foreign yachts, three (3) in particular,[7] were being offered for sale in the Fort Lauderdale and Miami areas without the owner first filing entry and paying duties.

Following thereupon, plaintiff met with Agent Adan and other Customs agents at Customs' Miami office the next day. Apparently plaintiff brought with him to that meeting (i) yachting magazines, (ii) a broker's computerized listing of yachts for sale in the area, and (iii) a handwritten list containing the names of sixteen (16) yachts.[8] Although

---

or any violation of the customs laws ... [and] such information leads to a recovery of any duties withheld, or any fine, penalty, or forfeiture of property incurred; the Secretary may award and pay such person an amount that does not exceed 25 percent of the net amount so recovered."

**3.** *See RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286, 1288 (Fed.Cir.1999); 28 U.S.C. § 2412(d)(1)(A).

**4.** COFC Rule 68, Offer of Judgment, states at follows:

"At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the defending party's offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either

party may then file the offer and notice of acceptance together with proof of service thereof, and thereupon the clerk shall enter judgment."

Defendant served the offer of judgment on February 12, 2002, and plaintiff timely accepted on February 22, 2002.

**5.** *See* 19 U.S.C. § 1592.

**6.** Pl.'s Mem. Supp. Mot. Atty's Fees & Costs at 2 (emphasis added); Joint Status Report of October 16, 2001 at 1; Pl.'s [Pre-trial] Mem. Contentions Fact & Law at 1.

**7.** The "Always," the "Lady Emmanuel," and the "Southern Cross III."

**8.** The "Always," "Lady Emmanuel," "Bison," "Southern Cross," "Caprise," "L'Aquasition," "Sea Anemity," "Almaviva," "Intrepid II," "Princess Marla," "October Rose," "Galaxy,"

defendant claims to have had pre-existing knowledge (through prior investigations) of the illegal sale of yachts in the area, it opened a new investigation entitled "Operation Freeboard," and in connection therewith, plaintiff was to be a confidential informant.

Soon thereafter, as early as April 10, 1995, the relationship between Mr. Doe and Customs began to sour. Having completed a criminal background check on plaintiff, Agent Adan discovered that plaintiff had a record of two prior arrests which caused Customs to believe that plaintiff had not been forthcoming during an early conversation. Plaintiff contended that the question previously asked of him by the agent was whether he had any "convictions," and not "arrests." At the same time, the parties were at odds over Customs' refusal to enter into a formal agreement with plaintiff regarding his role in "Operation Freeboard" and any monetary compensation resulting therefrom. Not surprisingly, the impasse caused by those tensions proved sufficient to permanently sever any further cooperation between the parties.

Notwithstanding the foregoing, Customs proceeded, on April 24, 1995, to constructively seize the "Intrepid II" for "being offered for sale without proper entry being filed and proper duty being paid in violation of 19 U.S.C. § 1592(c)." Def. Opp'n Br. at 7. Customs thereby levied a $2,835,000 penalty against the vessel's owner, of which 99 percent was subject to a drawback claim.[9] Thus, pursuant to an offer in compromise, only $25,000 was actually retained by Customs for the penalty action. Additionally, $283,500 in duties was assessed by Customs, but ultimately that charge resulted in a net amount received of $2,835. *Id.*

Continuing its active investigation under "Operation Freeboard," on May 8, 1995, Customs cited the owner of the yacht "M/V Southern Cross III" for "offering the yacht for sale in the United States while it was entered under a temporary importation bond in violation of 19 CFR § 31(a)(3)(iii)." Def. Opp'n Br. at 8. In the end, Customs determined that it had insufficient evidence to sustain the charge, and was subsequently forced to terminate the $450,000 liquidated damages action.

Finally, on August 6, 1999, Customs issued a penalty notice to Merle Wood and Associates, a yacht brokerage firm, in the amount of $2,835,000, for "offering foreign vessels for sale in the United States without paying the proper duties in violation of 19 U.S.C. § 1592." *Id.* Apparently there have been no payments or collections respecting said penalty, and, with the statute of limitations having since run, Customs is precluded from taking any further action.

Beginning in February 1997, plaintiff submitted sixteen (16) administrative claims for monetary compensation in connection with Operation Freeboard pursuant to 19 U.S.C. § 1619. Customs eventually denied all of plaintiff's claims on the ground that plaintiff had not provided "original information." [10] Later, plaintiff's administrative appeal was also denied.[11]

Notwithstanding his outstanding administrative claims with Customs, plaintiff brought an informant's award claim in this court on November 12, 1999, seeking twenty-five (25) percent of any and all penalties and/or duties assessed by Customs[12] in connection with any of the sixteen (16) vessels of which he had previously informed Customs. This included the "Intrepid II" and the "M/V Southern Cross," and a later allegation that Customs failed to actively pursue the penalty levied against the brokerage firm of Merle Wood and Associates.

In its trial brief, defendant argued that, at best, plaintiff could only obtain an award from the *net* amounts recovered, *i.e.*, 25 percent of the $27,835 net amount actually recovered from the "Intrepid II" seizure, but even that was unattainable by plaintiff be-

---

"VWII," "Lady Estelle," "Battered Bull," and "Moon Struck."

**9.** *See* 19 U.S.C. § 1313(j).

**10.** These claims were denied on July 18, 2001.

**11.** Plaintiff's administrative appeal of July 24, 2001, was denied on October 23, 2001.

**12.** Pursuant to 19 U.S.C. § 1619.

cause he did not provide "original information." On February 12, 2002, more than ten (10) days prior to the May 8, 2002 trial date, defendant served an Offer of Judgment for $7,000 upon plaintiff pursuant to RCFC 68, whereby plaintiff timely accepted and filed same on February 22, 2002. Judgment was duly entered by the Clerk of the Court. Following thereupon, plaintiff timely filed an application for attorney fees and expenses on March 27, 2002 (by leave of court).

DISCUSSION

As a foundation, the Claims Court has long observed that the EAJA was created to address "a longstanding congressional concern that private individuals and small businesses were being 'deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and administrative proceedings.'" *Change–All Souls Housing Corp. v. United States,* 1 Cl.Ct. 302, 303 (1982) (citations omitted). Hence, "[t]he primary purpose of the Act is to reduce the economic deterrents ...[with the] intent[ ] to make whole those small businesses and individuals who have been the victims of unreasonable governmental actions." *Id.*

Conversely, the eligibility requirements of the EAJA are intended to preclude the recovery of attorney fees and expenses by individuals and other entities who can well afford the cost of litigation. *Unification Church v. INS,* 762 F.2d 1077, 1082 (Fed.Cir.1985).

*Standard of Review*

In connection with the foregoing, the relevant subsections of the EAJA provide the following guidance for properly applying the statute:

"Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substan-

tially justified or that special circumstances make an award unjust."

28 U.S.C. § 2412(d)(1)(A).

"A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought."

28 U.S.C. § 2412(d)(1)(B).

*Application*

Succinctly stated, to establish *prima facia* entitlement to an award pursuant to the EAJA, the plaintiff's timely application must: (1) make a showing that the plaintiff (i) is a prevailing party, (ii) is financially eligible to receive an award, and (iii) actually incurred the fees it is seeking to recover; and (2) allege that the government's position in the underlying cause of action lacked substantial justification. Since the foregoing elements are in the conjunctive, the court is, therefore, statutorily constrained to deny plaintiff's application/motion should he fail to meet *any* one of the foregoing requirements.

On the other hand, should the plaintiff adequately establish statutory compliance, the burden of proof then shifts to the government to show that its position was "substantially justified or that special circumstances make an award unjust." *Citizens Coalition v. Euclid,* 537 F.Supp. 422, 424 (N.D.Ohio 1982), *aff'd,* 717 F.2d 964 (6th Cir.1983) (cit-

ing 28 U.S.C. § 2412(d)(1)(A)). The record before us indicates that plaintiff sufficiently met all of the foregoing statutory requirements with the exception of financial eligibility.[13] Accordingly, as a matter of law, it is only necessary for this court to focus its analysis on the financial eligibility requirement, which has proven itself to be the Achilles' heel of plaintiff's fee award claim. We, therefore, do not reach the government's substantial justification defense.

*Financial Eligibility*

Pursuant to 28 U.S.C. § 2412(d)(2)(B)–

"A 'party' means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner or an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed."

Plaintiff's eligibility as a party was contested by defendant in its initial opposition brief indicating that the plaintiff had not complied with the EAJA by making a *showing* of, and not merely *alleging*, eligibility. Def. Opp'n Br. at 12. Specifically, defendant complained that "[plaintiff's] application, and memorandum in support thereof, is completely devoid of either: 1) an allegation that he is eligible; or 2) any [probative] evidence of his financial status at the time he filed his complaint." *Id.* In connection therewith, plaintiff amended his application presumably intending to *cure* the deficiencies noted by defendant. Subsequently, in defendant's brief opposing plaintiff's amended application, defendant is silent as to any further challenges to eligibility, and focuses, *inter alia*, on its substantial justification argument.

Included with plaintiff's amended application, plaintiff submitted an affidavit in the form of a questionnaire and a document entitled "Cashflow Worksheet" (also affirmed by plaintiff). The questionnaire listed six (6) inquiries regarding plaintiff's financial status to which the plaintiff responded as follows (paraphrasing):

1. He is not presently employed.

1b. He was last employed in 1993 (the balance of question, "amount of salary received," was left unanswered).

2. Within the past twelve (12) months he has not received any income of any kind from any source.

3. He does not own any cash or have any checking or savings accounts. .

4. He does not own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing).

5. He supports his wife.

6. He has retained an attorney to represent him.

The Cashflow Worksheet proffered the following: [14]

BALANCE SHEET

| Liquid Assets | | |
|---|---|---|
| Cash, Bank Accounts, Money Market Funds | $ | 65 |
| Total | $ | 65 |
| Liabilities | | |
| Unsecured Personal Credit | | $85,000 |
| Total | | $85,000 |
| Net Worth | | ($84,935).[15] |

Plaintiff cited to this court's opinion in *Fields v. United States* [16] in the same amended brief containing the foregoing submissions. In reference thereto, plaintiff stated that he is "aware of the admonition in *Ed Fields v. U.S.*, 29 Fed.Cl. 376, 383 (1993) that

---

**13.** In other words, plaintiff made a showing that he was the prevailing party, had incurred attorney fees, and alleged that the government's position lacked substantial justification.

**14.** The worksheet presented by plaintiff had numerous line-items and several captions, but the information captured here are those lines containing relevant figures. In other words, no other information on the worksheet shows any

assets or other value nor lends itself to the computation of net worth.

**15.** Plaintiff's mathematical error has been corrected from $85,065.00 to $84,935.00.

**16.** 29 Fed.Cl. 376 (1993), *aff'd*, 64 F.3d 676, 1995 WL 479327 (Fed.Cir.1995).

in a reply brief there must be 'an integrated balance sheet reflecting a systematic analysis of the assets and liabilities of plaintiff establishing his net worth....'" Pl.'s Reply Br. & Am.App. at 1.[17] Upon examination of plaintiff's submissions before us, we find that he has missed the most important "admonition" in the *Fields* decision bearing on his fact circumstances, to wit, that self-serving, unsupported statements alone are not enough. *Fields,* 29 Fed.Cl. at 382.

In *Fields,* the plaintiff, a government contractor, sought to demonstrate his financial eligibility on the grounds that he, as an individual, did not have net worth in excess of $2,000,000, and, as a business, did not have net worth in excess of $7,000,000, nor employees numbering more than 500. Plaintiff therein submitted a mere affidavit in narrative form containing self-serving statements to that effect. After plaintiff contractor was allowed to supplement his application, the court remarked that "plaintiff has submitted a hodge-podge of data, but has failed to submit balance sheet(s)." *Id.* at 383. But that was not the court's holding. The holding in *Fields* is contained in the passage below:

> "[We] disagree[ ] with plaintiff's hospitable contention that the submission of his self-serving, non-probative affidavit alone is sufficient to establish his status as a 'party' eligible for the award of fees under the EAJA. Plaintiff submitted a bland affidavit stating that his individual net worth, the net worth of the unincorporated business he owns, and the number of employees he retained all at the time the action was filed meet the eligibility requirements of 28 U.S.C. § 2412(d)(2)(B), *but offered no supporting documentary evidence. A conclusory affidavit without supporting evidence is inadequate to establish such 'party' status. Thus, a petitioner requesting fees under the EAJA must present sufficient evidence so that his or her net worth may be ascertained and verified by the court....*"

*Fields,* 29 Fed.Cl. at 382 (additional emphasis added).

In the case here at bar, by submitting a "naked" worksheet in the itemized form of a balance sheet, plaintiff may have followed the letter, but certainly not the substance, of this court's instruction in *Fields.* Irrefutably, plaintiff's questionnaire and worksheet, alone, are of the same bland, self-serving, non-probative, unsupported variety as those rejected in *Fields.* Therefore, we are constrained to hold that plaintiff's submissions clearly fall short of the sufficient showing expressed in the holding in *Fields,* and he admits as much in his reply brief, as follows:

> "Plaintiff has timely filed his application and amended application for fees; he has alleged and shown that he is a prevailing party; and, he has shown that the position taken by the United States, as demonstrated by its abrupt change in position, *inter alia,* was not substantially justified. The United States has not contested that the plaintiff meets the statutory eligibility requirements of section 2412(d)(2)(B), thus conceding this issue. [Citation omitted]. Plaintiff does not own a business so [the $7,000,000/500 employee standard of] this provision is inapplicable. The plaintiff and his wife have been in a situation over the past several years where they are, without equivocation, down-on-their-luck. Without question, plaintiff's net worth is less than $2,000,000. Plaintiff has sworn under the penalty of perjury that his net worth statements are correct.

> Plaintiff is aware that if he had supporting documentary evidence for his net worth statement, it would greatly assist the Court to evaluate his net worth. But the fact is he does not have tax records; nor balance sheet; nor a financial statement which might be presented in applying for a loan. The net worth statement submitted with the amended application is an accurate depiction of his assets and liabilities. Plaintiff advised undersigned counsel by telephone that he has not filed tax returns because whatever income he might have earned, was below the required amount which would have triggered the filing of a tax return [footnote omitted]. While plaintiff would have preferred to submit an

---

**17.** Note that plaintiff does not accurately repre- sent the court's statement.

audited, certified balance sheet and net worth statement, it was financially impossible."

Pl.'s Reply to Def.'s Opp'n to Pl.'s Am.App. at 5–6.

Although the defendant ceased to challenge plaintiff's financial eligibility, this court cannot turn a blind-eye to such a woefully inadequate *showing*. Based upon the foregoing bland statements, plaintiff's counsel has all but portrayed plaintiff as a pauper without "portfolio." While the court is not unsympathetic to any unfortunate plight that may have befallen plaintiff, it is, however, unmoved by the reliance of plaintiff's counsel on a plethora of self-serving contentions *in lieu of* the presentation of probative evidentiary support.

Plaintiff, in effect, is asking us to ignore this court's prior holding in *Fields*. He is also asking the court to ignore the incredulous aspects of his self-serving representations to the court, inasmuch as (1) the underlying cause of action began with the assertion that plaintiff was "*a prospective buyer*" of a yacht (at some time between 1987 and 1995), (2) plaintiff now represents that he has absolutely no means of subsistence from any source, (3) notwithstanding fact (2), he supports his wife,[18] (4) he has hired an attorney, and (5) except for the $65 in cash reflected on his statement, he owns no checking or savings accounts, no money market accounts, or no funds from any source whatsoever.

Again, this is not a matter of the court taking a callous stand here. Instead we are bound to a strict construction of the operative statute. *Fields*, 29 Fed.Cl. at 381. Just as we acknowledged in *Fields*, "[t]he purpose of the EAJA is to lift the 'bar of sovereign immunity for award of fees in suits brought by litigants qualifying under the statute.' *Levernier Constr., Inc. v. United States*, 947 F.2d 497, 502 (Fed.Cir.1991). As a waiver of sovereign immunity, the Act must be strictly construed, allowing for the award of fees 'only to the extent explicitly and unequivocally provided.' *Id.* (quoting *Fidelity Constr. Co., Inc. v. United States*, 700 F.2d 1379, 1386 (Fed.Cir.[1983]) [ ]." *Id.* (quoting *Scherr*

*Constr. Co. v. United States*, 26 Cl.Ct. 248, 250 (1992) (emphasis omitted))).

At first glance, plaintiff appears to be the precise litigant intended by Congress when it created the EAJA, but to be sure, plaintiff must make a sufficient *showing*. In that connection, this court has already ruled in its previous decision in *Fields* that self-serving affidavits alone do not cut muster, and such still holds true regardless of the *form* in which they may be presented. The court independently observes that there are several means by which plaintiff's submissions could have been supported with probative, verifiable documentary evidence, with minimal effort required to be expended by plaintiff.

CONCLUSION

Thus, for all of the foregoing reasons, plaintiff's application/motion for an award of attorney fees and expenses pursuant to 28 U.S.C. § 2412 is hereby DENIED for want of proof.

IT IS SO ORDERED.

---

**18.** The reasonable inference deduced by the court from this admission by plaintiff is that his spouse is fully dependent upon him for self-support and thus is without funds.