BRICKWOOD CONTRACTORS,
INC., Plaintiff–Appellee,

v.

UNITED STATES, Defendant–
Appellant.

No. 01–5121.

United States Court of Appeals,
Federal Circuit.

May 3, 2002.

Robert M. Moore, Moore & Lee, of Mc-Lean, VA, for plaintiff-appellee. With him on the brief was Kristen A. Bennett.

Michael E. Robinson, Attorney, Appellate Staff, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; and Michael Jay Singer, Attorney. Of counsel were David M. Cohen, Director, Commercial Litigation Branch; and Robert E. Kirschman, Jr., Attorney. Also of counsel was Richard G. Welsh, Attorney, Office of General Counsel, U.S. Department of the Navy, of Washington, DC.

Before CLEVENGER, RADER, and PROST, Circuit Judges.

PROST, Circuit Judge.

The principal issue in this case is the applicability of the Supreme Court's recent decision in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), to the fee-shifting provisions of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The United States Court of Federal Claims, in a decision dated June 29, 2001, held that Brickwood Contractors Inc.'s ("Brickwood") recovery of attorney fees under the EAJA is not barred by *Buckhannon*. Because we disagree with the Court of Federal Claims' conclusion that *Buckhannon* does not apply to the EAJA and its alternative theories that attorney fees in this case are permissible under *Buckhannon*, we reverse.

BACKGROUND

On February 9, 1999, the Department of the Navy ("Navy") issued an Invitation for Bids ("IFB") to repair elevated water storage tanks at the Naval Air Station, Patuxant River, Maryland. Thereafter, the Navy issued amendments to the solicitation adding Polychlorinated Biphenyl ("PCB") contamination testing to the base requirements and adding three options related to removing PCB contamination from the water storage tanks. Five bids (base bid plus options) were received and publicly opened on April 6, 1999, with Brickwood identified as the apparent lowest bidder. As a result of further testing, however, the Navy determined there was no evidence of PCB contamination and on May 5, 1999, announced that the bids on the options were no longer needed and would therefore be excluded from the final price evaluation. Because of this change, Brickwood no longer had the lowest bid.

On June 15, 1999, the Navy further amended the solicitation, converting it from an IFB, or a solicitation of bids, to a Request for Proposals ("RFP"), or a negotiated procurement, deleting the Evaluation of Options and eliminating the requirements regarding PCBs. The Navy intended to negotiate with the bidders whose bids did not include the now determined unnecessary PCB testing.

On June 18, 1999, Brickwood filed a bid protest in the Court of Federal Claims seeking to enjoin the Navy from converting the IFB to an RFP and to direct the Navy to award the contract to Brickwood. A hearing was held on Brickwood's request for a temporary restraining order ("TRO") on June 21, 1999. On July 16,

1999, prior to any court decision on that TRO request, the Navy filed a Motion to Dismiss informing the court that "[a]fter further consideration of both the circumstances surrounding the solicitation and the governing FAR provisions, and in light of the Court's comments at the TRO hearing, the Navy has cancelled the solicitation and plans to re-solicit using a new IFB." The court dismissed Brickwood's protest on July 22, 1999, "without reaching the merits of the case."

Thereafter, on August 23, 1999, Brickwood filed an EAJA application seeking attorney fees and expenses for work performed on the lawsuit protesting the Navy's attempted conversion to an RFP and on the EAJA application.

In its opinion dated April 9, 2001, the Court of Federal Claims found that Brickwood satisfied the requirements necessary for entitlement to attorney fees and expenses under the EAJA.[1] *Brickwood Contractors, Inc. v. United States,* 49 Fed. Cl. 148, 150 (2001) (*"Brickwood I"*). Applying the "catalyst theory" of "prevailing party" status pursuant to the EAJA, the court found that Brickwood was the "prevailing party" because it had succeeded on a significant issue in the litigation that resulted in a benefit to the plaintiff. In so doing, the court relied on what it termed the "advice" offered by the Supreme Court in *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), a case interpreting the "prevailing party" requirement with respect to attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. That "advice" was:

> A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment—e.g., a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.

*Id.* at 760–61, 107 S.Ct. 2672.

Notably, in applying *Hewitt's* interpretation of the term "prevailing party" in 42 U.S.C. § 1988 to the same term in the EAJA, the court observed that "this construction of prevailing party is consistent with the policy behind EAJA, to compensate parties who cause the government to conform to the law." *Brickwood I,* 49 Fed. Cl. at 154–55. The court further found that the government's position in litigation (and its underlying conduct regarding the procurement) was not substantially justified, and that there were no special circumstances that would make the award of fees unjust. *Id.* at 163. Final judgment was issued on May 1, 2001, awarding plaintiff $10,939.00 in attorney fees and expenses.

On May 29, 2001, the Supreme Court issued its opinion in *Buckhannon* denying the plaintiff's fee claim under the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c)(2) ("FHAA") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205 ("ADA"). In so doing, the Court rejected the "catalyst theory" as a basis for attorney fee awards under fee shifting statutes because it allows a fee award "where there is no judicially sanctioned change in the legal relationship of the parties." *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835.

On June 8, 2001, the government filed a motion for relief from the court's prior judgment awarding attorney fees to Brickwood pursuant to Rule 60(b) of the Rules

---

1. The Court of Federal Claims recognized in *Brickwood I* that "[t]he Supreme Court [had] granted certiorari in a case in which the viability of the catalyst theory is directly at issue." 49 Fed. Cl. at 154 n. 4.

of the United States Court of Federal Claims, arguing that the Supreme Court's decision invalidated the basis of that judgment. The court concluded, however, that *Buckhannon* did not bar recovery by Brickwood and thus denied the government's motion.[2] First, the court held that *Buckhannon* does not apply to the determination of "prevailing party" under the EAJA, stating broadly that "[t]he standards for meeting the 'prevailing party' requirement recently set forth in *Buckhannon* conflict with the plain language and the legislative history of the EAJA." *Brickwood II*, 49 Fed. Cl. at 745 n. 5. The court based its conclusion on the fact that while *Buckhannon* applied to two specific statutes (the FHAA and the ADA) and referenced three others, the EAJA was not mentioned. Further, the court contrasted the EAJA and the five cited fee-shifting statutes, noting that the former stated that an award "*shall* be made unless the court finds that the position of the United States was *substantially justified*," whereas the latter allowed broad discretion to trial courts by use of the term "may" without any further "substantial justification" requirement. *Id.* at 746–47 (emphases added). The court concluded that these distinctions were significant in the context of construing the term "prevailing party": "Because the 'substantially justified' analysis directs the court to consider the merits of the case underlying the EAJA application, a plaintiff cannot prove the legal merits of the case solely through the 'prevailing party' requirement." *Id.* at 747. Thus, based on this analysis, the court concluded that the term "prevailing party," as it appears in the EAJA, means

something different from that same term in other fee-shifting statutes. *Id.*

Second, the court concluded that the facts in *Brickwood II* were materially distinguishable from those in *Buckhannon* since the latter involved a change by the legislature in eliminating the requirements at issue in the litigation. Thus, in *Buckhannon* neither the Court nor the plaintiffs had a direct role in the action that engendered resolution of the case. *Id.* at 744.

Finally, the court held, in the alternative, that Brickwood is a "prevailing party" even if *Buckhannon* applies by virtue of the comments made by the court at the June 21, 1999, TRO hearing. *Id.* at 747–49. According to the court, although it did not issue a written opinion, at the TRO hearing it "announced its acknowledgement of the merits of plaintiff's claims, the rectitude of plaintiff's position, and the error of defendant's actions." *Id.* at 748. Those remarks, the court concluded, "amounted to a finding that the Navy had acted unlawfully ...." and "represent the necessary 'judicial imprimatur' that caused the change in the legal relationship of the parties." *Id.* at 749. In this regard, the court also expressed its "strong" opinion that "to interpret *Buckhannon* as requiring formal written judgments on the merits or formal findings of unlawful conduct will inhibit settlements and discourage parties from taking self-corrective action such as that taken by defendant in *Brickwood.*" *Id.*

The United States filed a timely notice of appeal on July 2, 2001, from both the May 1, 2001, judgment and the June 29,

---

**2.** The court acknowledged that although judgment had been entered in *Brickwood I*, the Supreme Court's decision, if applicable, provides authoritative law and must be given full retroactive effect in all cases still open on direct review, regardless of whether such events predate or postdate announcement of the rule. *Brickwood Contractors, Inc. v. United States*, 49 Fed. Cl. 738, 741 (2001) (*"Brickwood II"*) (quoting *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)).

2001, order denying the Rule 60(b) motion. This court has jurisdiction pursuant to 28 U.S.C. 1295(a)(3).

## DISCUSSION

 This court reviews a trial court's decision to award fees and expenses under the EAJA for an abuse of discretion. *Giesler v. United States*, 232 F.3d 864, 869 (Fed.Cir.2000). This court also reviews a trial court's ruling on a Rule 60(b) motion for abuse of discretion. *Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 794 (Fed.Cir.1993). We review the Court of Federal Claims' legal interpretation of the EAJA *de novo*. *Levernier Constr., Inc. v. United States*, 947 F.2d 497, 499 (Fed.Cir.1991).

 In *Buckhannon*, the Supreme Court rejected the use of the "catalyst theory" in construing whether one is a "prevailing party" under federal fee-shifting statutes such as the FHAA and the ADA. The "catalyst theory" grants prevailing party status to a plaintiff "if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 601, 121 S.Ct. 1835. The Court held that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Id.* at 604, 121 S.Ct. 1835 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866, (1989)). Both the majority and dissent in *Buckhannon* acknowledged that the "catalyst theory" had previously been recognized by the majority of Federal Courts of Appeals. *See id.* at 602, 121 S.Ct. 1835; *see also id.* at 625–26, 121 S.Ct. 1835 (Ginsburg, J., dissenting).

In *Buckhannon*, the named plaintiff, an operator of assisted living homes, failed a state fire marshal's inspection because some of its residents were incapable of "self-preservation," i.e., removing themselves in such dangerous situations as fires. *Id.* at 600, 121 S.Ct. 1835. Plaintiffs sued the state seeking declaratory and injunctive relief and alleging that this self-preservation requirement violated the FHAA and the ADA. While the case was pending in District Court in West Virginia, that State's legislature enacted two bills that eliminated the "self-preservation requirement." The State's motion to dismiss the case as moot was granted by the District Court and the plaintiff then sought attorney fees as the "prevailing party" pursuant to the FHAA and the ADA, basing its entitlement on the "catalyst theory."

The Court in *Buckhannon* affirmed the Fourth Circuit's decision that the "catalyst theory," which allows a fee award where there is no judicially sanctioned change in the parties' legal relationship, lacks the necessary judicial imprimatur on the change to establish "prevailing party" status. Thus, the Court concluded it is not a permissible basis for the award of attorney fees under the FHAA and the ADA. According to the Court:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold it does not.

*Id.* at 600, 121 S.Ct. 1835. Following the Supreme Court's decision in *Buckhannon*, the Court of Federal Claims rejected the government's argument that the Supreme Court's holding in *Buckhannon* compels a rejection of the award of attorney fees in

*Brickwood II* on three alternative grounds: (1) *Buckhannon* does not apply to attorney fees under the EAJA; (2) even assuming *Buckhannon* applies to the EAJA, its holding is limited to its facts—a purely voluntary change by the legislature not prompted by a lawsuit—and those facts are distinguishable from the facts in *Brickwood II;* and (3) even if *Buckhannon* applies to the EAJA and to the facts of this case, the court's statements at a prior TRO hearing met the requirements of *Buckhannon.* We reject all of the Court of Federal Claims' alternative theories and discuss each in turn.

### A

The Court of Federal Claims concluded that the Supreme Court's decision in *Buckhannon* rejecting the "catalyst theory" of the "prevailing party" requirement does not apply to the EAJA notwithstanding that the term "prevailing party," as construed by the Supreme Court in *Buckhannon,* appears in virtually all fee-shifting statutes including the EAJA. Instead, examining the text of the EAJA and its legislative history, the court concluded that the term "prevailing party" has a different meaning when used in the EAJA than when used in other fee-shifting statutes. We disagree.

 As the Supreme Court observed in *Buckhannon,* under the "American Rule, we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.' " *Buckhannon,* 532 U.S. at 602, 121 S.Ct. 1835 (citing *Key Tronic Corp. v. United States,* 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)). In the numerous statutes in which Congress has provided for an exception to the "American Rule" by permitting certain designated parties an award of their litigation costs, Congress has used the term "prevailing party," a legal term of art. *Id.* at 603, 121 S.Ct. 1835.

Although two particular fee-shifting statutes, the FHAA and the ADA, were at issue in *Buckhannon,* the Court made it clear that its analysis applied to "the award of attorney's fees to the 'prevailing party' in numerous statutes in addition to those at issue here." 532 U.S. at 602, 121 S.Ct. 1835. Indeed, while *Buckhannon* specifically listed three fee-shifting statutes in addition to the FHAA and the ADA, the Court also expressly cited to the Appendix to Justice Brennan's dissenting opinion in *Marek v. Chesny,* 473 U.S. 1, 43–51, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), which lists over 100 federal fee-shifting statutes. In a footnote immediately following the reference to the *Marek* Appendix, the Court stated: "We have interpreted these fee shifting provisions consistently ... and so approach the nearly identical provisions at issue here." *Id.* at 603 n. 4, 105 S.Ct. 3012 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). *Hensley,* which considered fees under the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, held that the standards used to interpret the term "prevailing party" under any given fee-shifting statute "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " *Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. 1933; *see also Schultz v. United States,* 918 F.2d 164, 166 n. 2 (Fed.Cir.1990), 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 80 (1991) ("Indeed, the Supreme Court has recognized that the definition of 'prevailing party' does not differ from rule-to-rule or statute-to-statute.")

The Court of Federal Claims, however, differentiated between "prevailing party" under the EAJA and that same legal term of art found in numerous other fee-shifting statutes because the EAJA differs from other fee-shifting statutes in two other respects: (1) the EAJA mandates the award

of fees if specified conditions are met by use of the word "shall," whereas such awards in other statutes are left to the court's discretion; and (2) in contrast to other statutes, the EAJA includes an additional hurdle for an award of attorney fees by only permitting an award if the government's position was not "substantially justified."[3] The court concluded that this substantial justification hurdle alleviates the concerns of the Supreme Court that motivated its elimination of the "catalyst theory" since it requires the court to review the merits of the case.

The Appellant responds that the inclusion of the additional "substantial justification" requirement in the EAJA does not warrant an alternative interpretation of "prevailing party" under the EAJA. First, the Appellant points out that if an application for fees under the EAJA fails because the litigant is not a "prevailing party", the court never reaches the merits of the government's position in litigation. Also, the Appellant points out that the inclusion of the additional hurdle of "substantial justification" represents the fact that the bar under the EAJA awards was intended to be higher than other fee shifting statutes, whereas the application of the "catalyst theory" to only the EAJA would have the opposite result. These are simply two separate and distinct hurdles one seeking such fees from the government must overcome.

We agree with the Appellant's construction of the statutory language. The Court of Federal Claims is obviously correct that

there are certain differences between the EAJA and other fee-shifting statutes. The question, however, is not simply whether there are certain differences, but whether these differences would reasonably lead one to conclude that the "prevailing party" requirement in the EAJA should therefore be construed differently than in other statutes. Our examination of the text and the legislative history of the EAJA leads us to conclude that there is no basis for distinguishing the term "prevailing party" in the EAJA from other fee-shifting statutes. *See Perez–Arellano v. Smith,* 279 F.3d 791, 794 (9th Cir.2002) ("we discern no reason to interpret the EAJA inconsistently with the Supreme Court's interpretation of 'prevailing party' in the FHAA and the ADA as explained in *Buckhannon.*") The unique aspects of the EAJA demonstrate that when Congress wanted the EAJA to operate in a certain way, it did so explicitly by adding certain criteria. In contrast, it chose to use the same term—"prevailing party"—in the EAJA as it appears in other fee-shifting statutes. As the Ninth Circuit has observed, explicitly disagreeing with the Court of Federal Claims decision in *Brickwood II,*

> [a]ll three statutes [the FHAA, the ADA, and the EAJA] use the identical term, "prevailing party." There is no reason to assume this term has a different meaning simply because under the EAJA a "prevailing party" "shall" be awarded reasonable attorney's fees absent substantial justification for the gov-

---

**3.** To recover attorney fees under the EAJA, a person must be a "prevailing party." 28 U.S.C. § 2412(d)(1)(A) (1994). That section provides that:

> Except as otherwise specifically provided by statute, a court *shall* award to a *prevailing party* other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action

(other than in cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

*Id.* (emphases added).

ernment's position, whereas under the FHAA and ADA the court "may" award fees.

*Perez–Arellano,* 279 F.3d at 794 n. 20; *see also Thayer v. Principi,* 15 Vet.App. 204, 211 (2001) ("the language of all of [the EAJA] as compared to the FHAA and ADA, coupled with the structure and content of the Supreme Court's opinion in Buckhannon, demonstrates that the definition of 'prevailing party' set forth by the Supreme Court in Buckhannon applies to the appellant's EAJA application in this case.") As the Appellant also points out, the fact that the EAJA is mandatory and other fee shifting statutes are discretionary by no means warrants a different interpretation of the term "prevailing party." In fact, under certain statutes the term "may" has been construed in such a way that the scope of discretion is narrow. *See Chicano Police Officer's Ass'n v. Stover,* 624 F.2d 127, 129 (10th Cir.1980) (citing *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)).

Appellee Brickwood seeks further support for its position that the "catalyst theory" under the EAJA survives *Buckhannon* in the legislative history of the EAJA. Specifically, it cites to a statement in the Report by the Judiciary Committee that a party may be deemed a "prevailing party" if he obtains a favorable settlement of his case. H.R.Rep. No. 96–1418, at 11 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4990 (citing *Foster v. Boorstin,* 561 F.2d 340 (D.C.Cir.1977)).

With respect to the legislative history, we note first the doubt expressed in *Buckhannon* regarding whether legislative history can overcome the rather clear meaning of "prevailing party," the term actually used in statute. *See Buckhannon,* 532 U.S. at 608, 121 S.Ct. 1835 ("Particularly in view of the 'American Rule' that attorneys fees will not be awarded absent 'ex-

plicit statutory authority,' such legislative history is clearly insufficient to alter the accepted meaning of the statutory term."). In any event, we disagree with Brickwood as to the import of the legislative history it cites. Indeed, to the extent it is arguably relevant to congressional intent regarding the construction of the term "prevailing party," it confirms our view that the term was intended to have the same meaning and interpretation in the EAJA as in other fee-shifting statutes. In fact, the statement relied on by Brickwood and cited above is preceded by the statement: "It is the committee's intention that the interpretation of the term ['prevailing party'] be consistent with the law that has developed under existing statutes." H.R.Rep. No. 96–1418, at 11 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4990. Thus, what is probative about the comments found in the legislative history is not that Congress wished to apply the holding of one particular case dealing with another statute, but that it intended, overall, that the meaning and interpretation of "prevailing party" in the EAJA match and be consistent with its construction and interpretation in other federal fee-shifting statutes.

In sum, we reject the Court of Federal Claims' analysis that the text or the legislative history of the EAJA compels a reading or construction of the term "prevailing party" different from other federal fee-shifting statutes and thus conclude that the Supreme Court's construction of that term as not allowing for the "catalyst theory" applies with equal force and effect to the EAJA.

**B**

■ As previously noted, *Buckhannon* involved a suit against the state of West Virginia alleging that its effort to close assisted living residences pursuant to a "self preservation" requirement violated the FHAA and the ADA. After the state legislature acted to eliminate this statutory

requirement and the case was dismissed as moot, Buckhannon moved for an award of attorney fees under the "catalyst theory." In part, the Court of Federal Claims reached its conclusion in *Brickwood II* by distinguishing its facts from those in *Buckhannon*. In this regard the court stated:

[I]t appears from the facts articulated by the Supreme Court in *Buckhannon* that neither the court nor the plaintiffs had a role in bringing about the resolution of the case.... Although according to the dissent in *Buckhannon*, the plaintiffs alleged that their lawsuit caused the statutory change, a direct causation is unlikely given the independence normally exercised by legislatures when enacting laws. Moreover, the lawsuit filed by the plaintiffs did not cause a change in the defendant's behavior.... Under these circumstances, a plaintiff should not be entitled to claim and receive attorney's fees under *any* fee-shifting provision.

49 Fed. Cl. at 744 (emphasis added). This statement by the court, read broadly, suggests a view that the plaintiff in *Buckhannon* might not even qualify as a prevailing party under the "catalyst theory" and thus the "catalyst theory" might be alive and well—even under FHAA and the ADA—if litigation rather than legislative action is found to cause a change. We reject such an analysis. In our view, the Supreme Court in *Buckhannon* unambiguously rejected the "catalyst theory" except in instances where there is an enforceable judgment on the merits or a court-ordered consent decree, both of which create a material alteration in the legal relationship of the parties. The Court's holding in *Buckhannon* leaves no room for a distinction to be drawn between whether a

change is brought about by the legislature, as in *Buckhannon*, or by the government's cancellation of the solicitation in this case.

### C

■ Finally, the Court of Federal Claims held that "even if the *Buckhannon* standards were to be applied to recovery under the EAJA, the court's May 1, 2001 judgment need not be altered because the plaintiff Brickwood factually establishes itself as the 'prevailing party' by meeting the concerns described in *Buckhannon*." *Brickwood II*, 49 Fed. Cl. at 747. Specifically, the court referenced remarks it made at the TRO hearing at some length and concluded that "[i]n this exchange, the court, although it did not issue a written opinion, announced its acknowledgment of the merits of plaintiff's claim, the rectitude of plaintiff's position, and the error of defendant's actions." *Id.* at 748.

We disagree. As a preliminary matter, we note that the excerpt from the TRO hearing cited by the court is preceded by the following comment: "So, obviously, this is a bare-bones record and those are very conclusory and very preliminary thoughts, but it should be enough for you to work from, from this point forward." The court proceeded to set a schedule for further proceedings in this case. In any event, the Court of Federal Claims' conclusions regarding remarks at a TRO hearing miss the mark. In our view, the cited comments are clearly not sufficient to establish a judicial imprimatur and they do not constitute a "court-ordered change in the legal relationship" of the parties as *Buckhannon* requires. All we have in this case are simply "very preliminary" remarks at a TRO hearing and no TRO ever issued.[4]

---

**4.** Since a TRO was not issued in *Brickwood I*, we need not reach the question recently addressed by the Fourth Circuit of whether even the grant of a preliminary injunction is suffi-

cient to achieve "prevailing party" status under *Buckhannon*. *See Smyth v. Rivero*, 282 F.3d 268, 276 (4th Cir.2002) ("The fact that a preliminary injunction is granted in a given

The Court of Federal Claims concluded its analysis in this regard by observing that "[a]s a trial court, this court is of the strong opinion that to interpret *Buckhannon* as requiring formal written judgments on the merits or formal findings of unlawful conduct will inhibit settlements and discourage parties from taking self-corrective action such as that taken by the defendant in Brickwood." *Brickwood II*, 49 Fed. Cl. at 749. It is, of course, by no means clear why one would assume that the Navy in this case would be more likely to rescind its solicitation if it had to pay attorney fees than if it did not. What is clear is that there was neither a written nor an oral judgment in this case. More importantly, however, the Supreme Court in *Buckhannon* considered and rejected various policy arguments in favor of the "catalyst theory" and it is certainly not this court's role to insert our own policy views to reach a different result. As the Court held:

> Given the clear meaning of "prevailing party" in the fee-shifting statutes, we

need not determine which way [the] various policy arguments cut. In [*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) ], we said that Congress had not "extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." To disregard the clear legislative language and the holdings of our prior cases on the basis of such policy arguments would be a similar assumption of a "roving authority."

*Buckhannon*, 532 U.S. at 610, 121 S.Ct. 1835.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Federal Claims.

*REVERSED.*

circumstance ... by no means represents a determination that the claim in question will or ought to succeed ultimately; that determination is to be made upon the 'deliberate

investigation' that follows the granting of a preliminary injunction.")