**AL GHANIM COMBINED GROUP CO. GEN. TRAD. & CONT. W.L.L., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–271C.**

United States Court of Federal Claims.

Aug. 30, 2005.

Sam Z. Gdanski, Pomona, NY, for plaintiff.

Lauren S. Moore, Washington, DC, with whom was Assistant Attorney General Peter D. Keisler, for defendant. Robert J. McKenney, U.S. Army Corps of Engineers, of counsel.

## ORDER DENYING APPLICATION FOR ATTORNEYS' FEES AND COSTS

CHRISTINE O.C. MILLER, Judge.

After receiving a decision denying injunctive relief to halt work on a construction contract for military housing in Kuwait, the disappointed proposer applied for attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (2000) (the "EAJA"). Defendant challenged the applicant's eligibility. Unable to obtain the required supporting information from cognizant individuals because of the hostilities in the Middle East, the applicant secured multiple extensions to make the required showings. After almost two years, the record still has not been perfected. Argument has been held.

### FACTS

The background to this EAJA application is chronicled in *Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States*, 56 Fed.Cl. 502 (2003), and only the facts germane to the application are recited in this order.

Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. ("plaintiff"), a commercial entity organized under the laws of Kuwait, was an unsuccessful proposer for Contract No. DACA78–03–R–0008 awarded by the United States Army Corps of Engineers (the "Corps") on December 23, 2002. Competition for the indefinite delivery/indefinite quantity contract, which "cover[ed] primarily the construction of hardstands and support facilities to house temporary personnel at various locations in Kuwait[,]" was "limited to 'local Kuwaiti firms' that had completed prior contracts for the U.S. military satisfactorily." *Al Ghanim*, 56 Fed.Cl. at 504.

Alleging that the solicitation process was flawed, plaintiff initiated its injunction action before the United States Court of Federal Claims on February 7, 2003. Plaintiff sought a permanent injunction canceling the solicitation and ordering the Corps to resolicit proposals from those offerors that had been deemed technically acceptable or previously had not been evaluated. In order to obtain an injunction, plaintiff was required to show: 1) that it had achieved actual success on the merits; 2) that it would suffer irreparable injury if injunctive relief were not granted; 3) that the balance of the hardships tipped in the movant's favor; and 4) that an injunction would not be contrary to the public interest. *See FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed.Cir.1993).

After a full examination of the record, the court concluded that plaintiff established that the Corps had violated an applicable procurement regulation. *Al Ghanim*, 56 Fed.Cl. at 516. The court further held that plaintiff would suffer irreparable harm if injunctive relief were not granted, but that the balance of the hardships tipped in the Government's favor. *See id.* at 520–21.

In determining the final factor for injunctive relief, the court looked to 28 U.S.C. § 1491(b)(3), which mandates that, in exercising its bid protest jurisdiction, "the court[ ] shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." 28 U.S.C. § 1491(b)(3) (2000). Relying on an affidavit submitted in the judicial proceeding that a permanent injunction could impact " 'the ability of the nation to respond to the imminent needs for our troops,' " the court deferred to the exigencies asserted by

the Government. *Al Ghanim*, 56 Fed.Cl. at 521–22. Thus, the court ultimately held that plaintiff could not succeed in its quest for a permanent injunction because of the involvement of the United States in hostilities in Iraq. *Id.*

In retrospect, this embrace of the Government's generic claim absent overriding military necessity was naive. The Court of Federal Claims has not played the role that Congress allocated to it to guard the bona fides of the acquisition process. Contracts for procurement of goods and services for the war effort in Iraq are being awarded in a manner that circumvents judicial review. Because the court can render a decision within a period of time stipulated by the parties, see *Al Ghanim*, 56 Fed.Cl. at 521 (detailing efforts to ensure prompt disposition), the situation is lamentable.

**DISCUSSION**

The EAJA sets forth a cause of action for fees and costs, providing that

a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). In relevant part, a party is further defined as

any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]

28 U.S.C. § 2412(d)(2)(B)(ii).

■ An EAJA applicant must make a three-part showing in order to establish that it is a qualified party under the EAJA: It must show that (1) its net worth was less than $7 million at the time the action was filed; (2) it did not have in its employ more than 500 persons at the time the action was filed; and (3) it was the prevailing party in the underlying action. Only after the applicant has established that it meets these requirements and qualifies for an award under the EAJA must the Government show that its position "in the underlying litigation was 'substantially justified[.]'" *Scarborough v. Principi*, 541 U.S. 401, 414, 416–17, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting § 2412(d)(1)(A)).

1. *Net worth*

■ Defendant asserts that plaintiff is not a "party" for EAJA purposes because it fails to meet the financial eligibility requirement that its net worth did not exceed $7 million at the time the civil action was filed. *See Missouri Pac. Truck Lines, Inc. v. United States*, 746 F.2d 796, 798 (Fed.Cir.1984) ("[T]he statute provides for ... entities (1) with a net worth not in excess of $[7] million and (2) with not more than 500 employees."). Failure to submit documentation of plaintiff's net worth, for the purpose of determining whether plaintiff qualifies for an award under EAJA, renders an application deficient. *See Scherr Const. Co. v. United States*, 26 Cl.Ct. 248, 250–51 (1992).

■ Defendant relies on *Fields v. United States*, 29 Fed.Cl. 376 (1993), *aff'd*, 64 F.3d 676 (Fed.Cir.1995) (unpubl.table), for the proposition that an applicant must make an evidentiary showing that its net worth did not exceed the jurisdictional threshold. Plaintiff in *Fields*, following settlement, filed an EAJA application accompanied only by "'an affidavit where he state[d] that ... the net worth of his unincorporated business did not exceed $7 million nor did he employ more than 500 employees.'" 29 Fed.Cl. at 381 (quoting defendant's brief). The court deemed the affidavit to be conclusory, self-serving, and non-probative. Plaintiff could not establish "'party status'" absent "an integrated balance sheet reflecting a systematic analysis of the assets and liabilities of ... [plaintiff's] unincorporated business." *Id.* at 382; see also *Lion Raisins, Inc. v. United*

*States*, 57 Fed.Cl. 505, 511 (2003) (holding that tax return and three balance sheets, as well as declaration summarizing available testimony, were insufficient to establish plaintiff company's net worth); *Doe v. United States*, 54 Fed.Cl. 337, 342 (2002) (finding that affidavit in form of questionnaire and cashflow worksheet affirmed by plaintiff were "of the ... bland, self-serving, non-probative, unsupported variety .... [that] clearly fall short of the sufficient showing" requirements).

Analogously, plaintiff in the instant case submitted only a self-serving, non-probative affidavit, providing nothing resembling a balance sheet. To date, plaintiff has proffered only the Affidavit of Bader N. Maqwar, dated August 4, 2003.[1] Mr. Maqwar was plaintiff's Project Manager. His affidavit reads, in full, "Al–Ghanim Combined Group Co. Gen. Trading and Cont. W.L.L. is eligible to apply for fees and other expenses under the Equal Access to Justice Act and has a net worth of less than seven million dollars '$7,000,000'." Plaintiff provided no documentation with its EAJA application to support this appraisal of its net worth. Plaintiff's EAJA application therefore does not document adequately plaintiff's net worth.

Even if plaintiff's exiguous application and supporting affidavit were deemed sufficient to establish its net worth, the net worth set forth in Mr. Maqwar's affidavit is not expressed as of February 7, 2003, the date on which this action was filed. Although a plaintiff must have a net worth of less than $7 million "at the time the civil action was filed," 28 U.S.C. § 2412(d)(2)(B)(ii), the August 4, 2003 affidavit makes no mention of this earlier date.

As defendant notes, "Surely, as a business operating in Kuwait, Al Ghanim possesses contemporaneous financial information that would establish its net worth at the time the complaint was filed." Def.'s Br. filed Oct. 6, 2003, at 19. This observation is apt when,

over defendant's opposition, the court has afforded plaintiff two years in which to secure the requisite financial information.

Plaintiff initially asserted that its "counsel has been unable to successfully obtain [the requisite] corroborating information because [Mr. Maqwar,] the former project manager whom counsel directly worked for, is no longer [with the company]." Pl.'s Br. filed June 16, 2005, at 1. However, plaintiff's counsel later clarified during argument that Mr. Maqwar had been rehired. Plaintiff's claim that "[t]ravel precautions govern [its] ability to corroborate this information on site," Pl.'s Br. filed June 16, 2005, at 1, is equally untenable. Plaintiff's counsel disclosed during argument that Mr. Maqwar has traveled from Kuwait to England several times during the two-year period of delay.

Plaintiff, over defendant's strenuous objection, has requested an additional 45 days to secure the requisite support for its affidavit. Defendant contends that not only has plaintiff been afforded ample opportunity in which to find documentation, but that plaintiff has yet to document any efforts (such as a letter, or email, or facsimile transmission) requesting the information from Mr. Maqwar or the corporate plaintiff. This court agrees. Indeed, it appears that plaintiff's counsel missed opportunities to meet with or obtain documentation from Mr. Maqwar during his sojourns to England. Were the record to show that plaintiff's counsel exhausted the resources available to him, the court would allow a final opportunity to obtain the requisite documentation.

Because plaintiff has failed to satisfy one of the statutory requirements for an EAJA award, it is not eligible to recover attorneys' fees and costs. *See Missouri Pac. Truck Lines*, 746 F.2d at 797–98. However, in the interest of giving full consideration to plaintiff's application, the court will examine

---

1. It is a misnomer to label plaintiff's submission an "affidavit." An "affidavit" is defined as "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Black's Law Dictionary 58 (7th ed.1999). Mr. Maqwar's signed statement appears on Al Ghanim company letter-head and bears a company stamp. No indication is present that the statement was made under oath before an authorized officer. Because the only suggestion that the document is an affidavit is the heading naming it as such, reference herein to Mr. Maqwar's one-sentence submission as an affidavit merely reflects its caption.

whether plaintiff meets the other eligibility requirements.

## 2. Number of employees

■ Defendant argues that plaintiff has failed to establish that it meets the "party" requirements under the EAJA, which mandate that a business have fewer than 500 employees at the time the civil action is filed. "To qualify as a prevailing party, plaintiff must satisfy the eligibility requirements of both net worth and number of employees." Lion Raisins, 57 Fed.Cl. at 511; see also Missouri Pac. Truck Lines, 746 F.2d at 797 ("The legislative history [of the EAJA] shows that Congress intended the 500 employees limit to be an additional eligibility requirement for corporations."). Although plaintiff bears responsibility for offering supporting documentary evidence, it has made no representation at all regarding its number of employees. See Fields, 29 Fed.Cl. at 382 (holding that "it is clear that the statute places the burden of establishing eligibility on the applicant").

Although plaintiff's December 16, 2002 technical proposal gives the best indication of its number of employees, this source does not provide a definitive answer. At one point the proposal states that plaintiff "employs 367 staff in Kuwait" and has additional "access to the personnel and resources within the umbrella of [its] sister companies[.]" Admin. Rec. filed Feb. 21, 2003, at 000453. Later in the same proposal, plaintiff represented that it had 469 employees "with access badges to Doha" and 603 employees "with access badges to Kabal." Admin. Rec. at 000454, 000468. Plaintiff's counsel downplays the accuracy of these figures because the client informed him that they included subcontractors.[2]

This court cannot prepare evidence or speculate regarding its accuracy. See Fields,

29 Fed.Cl. at 383 (determining that plaintiff's "fragmentary submissions" left court with either option to "undertake to prepare" evidence or "speculate that the probabilities are that plaintiff [met] the ... eligibility requirements of" the EAJA and holding that both choices were "unacceptable"). Neither is it the responsibility of defendant to present proof that plaintiff fails to meet the EAJA's eligibility requirements. Id. at 381 (rejecting plaintiff's argument that defendant had not " 'offered a scintilla of evidence that Plaintiff's net worth or the number of his employees exceed[ed] the EAJA limits' "). Plaintiff has failed to show that it meets a second statutory requirement for an EAJA award.

## 3. Prevailing party status

■ Defendant further contends that plaintiff is not a prevailing party within the meaning of the EAJA. The term "prevailing party" was defined in Buckhannon Bd. & Care Home v. W. Va. DHHS, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); see also Brickwood Contractors, Inc. v. United States, 288 F.3d 1371, 1378 (Fed.Cir.2002) (holding that definition of "prevailing party" as determined in Buckhannon applies to "prevailing party" term in EAJA). In Buckhannon the Supreme Court examined whether the term "prevailing party" in the Fair Housing Amendments Act and the Americans with Disabilities Act "includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Id. at 600, 121 S.Ct. 1835. Ultimately, the Court determined that a party may be considered to be prevailing only where there is a "judicially sanctioned change in the legal relationship of the parties." Id. at 605, 121 S.Ct. 1835. Such a change may emanate only from "a judgment on the merits or ... a court-

---

**2.** Plaintiff has provided no supporting documentation regarding what this number may be. Moreover, this court would be required to conduct a factual analysis in order to determine whether these "subcontractors" would qualify as employees under an EAJA analysis. "The case law offers little guidance" regarding how to determine who is an employee for EAJA purposes. Lion Raisins, 57 Fed.Cl. at 512. The United States Court of Appeals for the District of Columbia, while recognizing "that not all those who

labor on behalf of an entity are its 'employees[,]' " upheld the district court's determination that a church had 7,000 employees because of deposition testimony that the workers held no other employment and labored in a "typical employer-employee relationship." Unification Church v. INS, 762 F.2d 1077, 1092 (D.C.Cir. 1985) (internal quotations omitted). Such an analysis is both unnecessary and impossible in this case, given plaintiff's lack of documentation.

ordered consent decree[.]" *Id.; see also Brickwood Contractors,* 288 F.3d at 1376, 1380 (rejecting "catalyst theory," which granted prevailing party status under the EAJA to plaintiff where suit brought about voluntary change in defendant's conduct, "except in instances where there is an enforceable judgment on the merits or a court-ordered consent decree, both of which create a material alteration in the legal relationship of the parties"). Plaintiff here was granted neither a judgment on the merits nor a court-ordered consent decree and, therefore, is not a prevailing party.[3]

## CONCLUSION

Accordingly, based on the foregoing, plaintiff's application is dismissed for failure to qualify under 28 U.S.C. § 2412(d)(2)(B)(ii).

**IT IS SO ORDERED.**

---

**3.** Plaintiff argues that the decision in *Naplesyacht.com, Inc. v. United States,* No. 04–252C (Fed.Cl. Mar. 31, 2005) (unpubl.), would qualify plaintiff as a prevailing party. Unpublished opinions of the United States Court of Federal Claims should be non-citable. See *Manville v. Sec'y of HHS,* 63 Fed.Cl. 482, 488 n. 11 (2004) (discussing United States Court of Appeals for the Federal Circuit rule regarding unpublished opinions). However, even if Naplesyacht.com were citable, it does not change the concept of material alteration as articulated in Brickwood. In Naplesyacht.com the court granted the plaintiff's EAJA application based upon the award of bid and proposal costs, an enforceable judgment against the Government that altered the parties' legal relationship. *Naplesyacht.com,* No. 04–252C, slip. op. at 10. Plaintiff's request that the court "revisit the issue of bid and proposal expenses," Pl.'s Br. filed June 16, 2005, at 3, is a belated effort to make the Naplesyacht.com approach applicable to this case and comes too late. A request for bid and proposal costs should have been included in plaintiff's complaint or a proposed amendment. Because judgment was entered in defendant's favor on May 8, 2003, there is no extant complaint to amend.