# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Starwalker PR LLC | )     ASBCA Nos. 60485, 60775 |
| | ) |
| Under Contract No. W91B4N-09-D-5005 | ) |

APPEARANCES FOR THE APPELLANT:    Will A. Gunn, Esq.
    Fort Belvoir, VA

    David G. Barger, Esq.
    Laura Metcoff Klaus, Esq.
    Richard L. Moorhouse, Esq.
    Ryan C. Bradel, Esq.
     Greenberg Traurig LLP
     McLean, VA

    Clarence Davis, Esq.
    Margaret N. Fox, Esq.
     Griffin & Davis, LLC
     Columbia, SC

APPEARANCES FOR THE GOVERNMENT:    Scott N. Flesch, Esq.
     Army Chief Trial Attorney
    MAJ Stephen M. Hernandez, JA
    Dana J. Chase, Esq.
    Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

Appellant, Starwalker PR LLC (Starwalker) seeks compensation for "return trips" that its trucks made after delivering cargo to destinations in Afghanistan pursuant to the contract referenced above.

## FINDINGS OF FACT

In March 2009, the government and a company called NLC Construction, LLC (NLC), entered the base year of the above-referenced contract for trucking services in Afghanistan (R4, tab 1 at 1). Later on, NLC changed its name to NCL Holdings (NCL), still later, NCL changed its name to VLOX (tr. 1/194; *see* R4, tabs 10, 12-17).

On March 8, 2010, NCL and the government entered into Modification No. 3 (R4, tab 6). Although by that time NLC had changed its name to NCL, the modification refers to the contractor as "NLC," not "NCL" (tr. 1/194; R4, tabs 10, 12-17). The modification exercised the first option period (to begin on March 16, 2010) (R4, tab 6 at 11).

In 2011, NCL changed its name to VLOX, LLC (R4, tab 36 at 1, tab 56 at 1). In late 2015, the government and VLOX settled some claims under the contract (R4, tab 61). In January 2016, the government and Starwalker entered Modification No. 8 to the contract, referring (many times) to Starwalker as the contractor, and stating that "[o]n January 26, 2015, VLOX assigned all remaining unpaid claims to Starwalker PR LLC . . . . VLOX certifies as of January 26, 2015 it assigned *all of its rights, title and interest in* and to payments to be made under *the contract to Starwalker PR LLC.*" (R4, tab 62 at 1-2, ¶ 11 (emphasis added)) VLOX and Starwalker are different companies (tr. 1/195).

The contract is of the indefinite-delivery, indefinite-quantity type, guaranteeing a minimum order amount of $250,000 (R4, tab 1 at 3-4), which was paid by March 2010 (tr. 3/116). In both appeals, Starwalker seeks compensation for unpaid "return trips" (also called "backhaul") during trucking missions that the government assigned. During the return trips, the trucks were not carrying any cargo (tr. 3/108, 175).

## DECISION

The government questions our jurisdiction, saying that Starwalker is not in privity with the government. We disagree. Modification No. 8 refers many times to Starwalker as the contractor, and certifies that VLOX "assigned all of its rights, title and interest in . . . the contract to Starwalker." With Modification No. 8, the government recognized the assignment of the contract to Starwalker, putting the two in privity. *See generally Mancon Liquidating Corp.*, ASBCA No. 18340, 74-1 BCA ¶ 10,470 at 49,512 (cataloguing other cases of government consent to contract assignment).

Nothing the government points to (gov't post-hearing br. at 4-11) persuades us otherwise. The government discusses anti-assignment statutes and cites *CBI Services, Inc.*, ASBCA No. 34983, 88-1 BCA ¶ 20,430, but in *CBI* the Board recognized that the government may waive compliance with anti-assignment statutes by treating a party as the contractor, and in dismissing that appeal for lack of jurisdiction the Board noted "the absence of any [contract] modifications, either bilateral or unilateral," between the government and the *CBI* appellant. *Id.* at 103,337-38. By contrast, here there is a bilateral modification with appellant in which the government, over and over again, expressly recognizes appellant as the contractor. We possess jurisdiction to entertain the appeals.

2

Starwalker says that the government owes it $76,977,780.87 for unpaid return trips performed during the base and option periods (app. post-hearing br. at 1, 28); however, Starwalker makes no effort in its post-hearing brief to demonstrate that, if it is entitled to such compensation, $76,977,780.87, or any particular amount, is the amount that the government owes. The Board will not do that work for appellant, and the appeals are denied, for failure to prove quantum. *Cf. United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320-21 (Fed. Cir. 2006) ("arguments raised in footnotes are not preserved"; quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim")); *AAR Airlift Grp., Inc.*, ASBCA No. 59708, 19-1 BCA ¶ 37,462 at 182,007 (citing cases); *GSC Constr., Inc.*, ASBCA No. 59046, 19-1 BCA P 37,393 at 181,797 ("Appellant requests $3,000 in claim preparation costs [], but presents no persuasive evidence in support of that very sparse claim. This portion of the appeal is denied."); *Cocoa Elec. Co., Inc.*, ASBCA No. 33921, 91-1 BCA ¶ 23,442 at 177,577 (denying claim for "failure to prove any damages"); *aff'd*, 64 F.3d 676 (Fed. Cir. Aug. 14, 1995) (table); *Orlosky Inc. v. United States*, 68 Fed. Cl. 296, 318 (2005) (refusing to "undertake to prepare evidence"); *Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States*, 67 Fed. Cl. 494, 498 (2005) ("This court cannot prepare evidence or speculate regarding its accuracy.").

My colleagues seem to imply that where the Board has been silent regarding bifurcation into entitlement and quantum phases, the Board should or may treat the proceedings as effectively bifurcated, particularly, perhaps, where a party has presented a perfunctory quantum case. In my experience, bifurcation at the Board is the result of the Board having affirmatively bifurcated proceedings, which did not happen here. Indeed, Starwalker does not appear to view the proceedings as having been bifurcated. Not only does Starwalker not say that the proceedings were bifurcated, in its initial post-hearing brief it says that "[f]or the foregoing reasons, the Board *should find that* . . . Starwalker is entitled to $76,977,780.87 plus applicable interest" (app. br. at 28 (emphasis added)), and in its post-hearing reply brief it says that "as set forth above and in Starwalker's prior filings, *the aboard should award* Starwalker $76,977,780.87 plus interest" (reply at 16 (emphasis added)).

3

## CONCLUSION

The appeals are denied.

Dated: March 2, 2020

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

4

# CONCURRING OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD

I concur in the result because I agree that the claims should be denied, not because appellant failed to discuss quantum in its brief and consequently was deemed to have not proved it, but because it is not entitled to recover on the facts of these appeals.

For decades, the ASBCA has established a preference for hearing entitlement only, bifurcating quantum until and unless entitlement is found. *See, e.g., Kenneth Fulghum*, ASBCA No. 5414, 60-1 BCA ¶ 2492 at 11,825 ("The amount of the equitable adjustment to which appellant might be entitled was not in issue, it being understood that the matter would be returned to the contracting officer for negotiation in the event appellant prevailed in this proceeding.").[1]

On other occasions the parties have chosen to have entitlement and quantum presented at trial, briefed and decided by the Board. *See, e.g., Parsons Evergreene, LLC*, ASBCA No. 58634, 18-1 BCA ¶ 37,137 at 180,787 ("The parties insisted that the Board decide both entitlement and quantum. The Board agreed.").

In most of those appeals, the parties were clearly asked their preference and the Board made it clear on the record that it acquiesced in that preference or clearly told the parties what was being heard and decided. That did not happen here. As best I can tell, the record is devoid of any discussion of entitlement and/or quantum, so we do not really know what the parties may or may not have presumed based upon our years long practice of hearing only entitlement or hearing both entitlement and quantum, yet clearly advising the parties which would occur. Thus I write separately to demonstrate why I concur in the result but not in its rationale. To do so, I must make additional findings of fact.

## ADDITIONAL FINDINGS OF FACT

1. The captioned contract called for Starwalker's predecessor[2] to "provide management, equipment, and labor to provide host nation trucking services throughout Afghanistan in accordance with the Statement of Work [(SOW)]" (R4, tab 1 at 5).

---

[1] To be sure, especially recently, some individual judges prefer combining the two in one hearing; nevertheless, the majority of judges, and our general practice, reflects a preference for bifurcation.

[2] Starwalker is the assignee of these claims as explained and decided in Judge McIlmail's opinion, with which I concur.

2. The contract's SOW described the background of the need for the procurement as follows:

> Afghanistan Theater of Operations requires the distribution of reconstruction materials, security equipment, and life support items throughout the Afghanistan Combined/Joint Area of Operations (CJOA). Retrograde operations are also expected. Convoy management services will be integrated into the current Afghanistan movement control systems and provide continuous convoy management team availability in accordance with mission requirements.

(*Id.* at 44)

3. In paragraph 1.2 the requirements of the procurement were described in part as follows:

> Contractor shall provide all resources including logistic support and management necessary to provide up to 100 trucks per day (estimated) for the secure long haul distribution of reconstruction, security, and life support assets from Forward Operating Bases (FOB) and distribution sites located throughout the Afghanistan Theater of Operations. Retrograde will also be expected.

(*Id.*)

4. Further, in terms of compliance, paragraph 1.3 of the SOW provided in part as follows:

> Contractor must comply with all movement requirements in theater to include but not limited to the Logistics Movement Request / Transportation Movement Request (LMR / TMR) process, in coordination with the Joint Movement Control Battalion (JMCB)

(*Id.*)

5. The SOW also provided that the "Contractor shall operate convoys to and from any location within the Afghanistan Theater of Operations, as directed on the official LMR/TMR, and issued through the JMCB" (*id.* at 49). The contractor was awarded a contract that included a firm fixed unit price for each type of vehicle employed for short haul mission days and for long haul mission days (*id.* at 6-8).

6

Pursuant to paragraph 4.2, one mission day was allowed for every 200 km of distance traveled within Afghanistan. Short haul missions were missions that consisted of two mission days or less anywhere in the Afghanistan area of operations, such that one mission day equaled 0-200 km and 2 mission days equaled 201-400 km. Long haul missions were any mission that was longer than two mission days, such that one long haul mission day equaled 401-600 km and two long haul mission days equaled 601-800km. (*Id.* at 49-50)

6. The SOW also included paragraph 4.10, Backhaul/Retrograde Operations, which provided as follows:

> Contractor shall pick up and deliver equipment and
> resources associated with backhaul/retrograde operations
> to and from any location within the Afghanistan Theater of
> Operations as indicated on an official LMR/TMR.

(R4, tab 1 at 53)

7. Backhaul is not defined in the contract but the parties clearly understood that it related to the movement of vehicles from the point of delivery to somewhere else with cargo the government contends and without cargo appellant contends. Mr. Wardak who founded NCL, a Starwalker predecessor, inquired during the pre-bid period about how they would get paid for backhaul, as follows: "Will backhaul/retrograde operations be charged short haul and long haul mission rates? (Ref: 4.10)." The government replied that "Backhaul/retrograde operations will be counted in accordance with SOW para. 4.2." (tr. 148-150; R4, tab 41 at 4 of 9)

8. Paragraph 4.10 of the contract SOW discusses backhaul, but makes clear that it requires an official LMR/TMR. Paragraph 4.2 (SOW), which was referenced in the question posed by appellant, relates to mission days for payment purposes. Thus interpreted, appellant asked, how were the mission days to be related to backhaul and the government answer said in essence, you need an LMR/TMR for a backhaul order.

9. For purposes of invoicing for services, the contract provided:

> The contractor shall only invoice for days of actual service
> performance. Specifically, time spent for mobilization,
> demobilization, rest and relaxation leave, sick leave or *any*
> *event not directed by the Government* shall not be included
> as a day of services for the purposes of invoices submitted
> to the Government.

(R4, tab 1 at 10) (Emphasis added)

7

10. Bilateral contract Modification P0003 executed on March 10, 2010 and effective as of March 16, 2010, modified Paragraph 4.10 to read as follows:

> **Backhaul.** Backhaul is the return movement of a truck, without USG cargo, from the point of delivery to the origination point, or any another [sic] point as determined by the Contractor. Backhaul is not compensated by the USG, unless specifically negotiated by the MCB in advance of movement. If a truck uploads new cargo following a download at a point of delivery, the movement of the truck to a new point of delivery will be as directed on an official LMR/TMR and the terms of this contract.

(R4, tab 6 at 16)

## DECISION

Appellant argues that it is entitled to be paid in mission days for backhaul operations when returning to the origin from a point of delivery of goods even without goods for delivery. The foregoing unambiguous contract provisions interpreted together lead to the conclusion that backhaul is only paid when the government requests (through a Logistic Movement Request) that cargo be hauled from the delivery point to somewhere else in the Afghanistan Theater of Operations.

Appellant further argues that it was coerced into signing P0003 and thus we should ignore its revised terms. I read the original contract as requiring an official LMT/TMR before the contractor could bill for the return trip. I read the modified Paragraph 4.10 as clarifying what was already clear - backhaul is not payable unless requested by the USG by issuing an LMR/TMR. Thus, we need not decide if appellant was coerced into signing P0003 as under the original contract language backhaul was not paid unless requested and under the modified, slightly clearer language, it is still not paid unless requested. Nor do we need to determine which, if any, backhaul charges claimed are outside the statute of limitations, because there is no entitlement to any damages.

## CONCLUSION

Based upon the foregoing, I deny appellant's claims for backhaul payments.

Dated: March 2, 2020

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60485, 60775, Appeals of Starwalker PR LLC, rendered in conformance with the Board's Charter.

Dated:

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals